AO 241
(Rev. 10/07)

Page 1

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: *South Carolina* |
|---|---|

| Name (under which you were convicted): *Anthony L. Mann* | Docket or Case No.: |
|---|---|

| Place of Confinement: *Lee Corr. Inst.* | Prisoner No.: *242498* |
|---|---|

| Petitioner (include the name under which you were convicted) *Anthony L. Mann* | Respondent (authorized person having custody of petitioner) v. *Warden Cecelia Reynolds* |
|---|---|

The Attorney General of the State of

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    *Charleston County Court of General Sessions*

    (b) Criminal docket or case number (if you know): *2002-GS-10-4413-4415*

2.  (a) Date of the judgment of conviction (if you know): *Sept. 24, 2003*

    (b) Date of sentencing: *Sept. 24, 2003*

3.  Length of sentence: *LWOP*

4.  In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: *Armed Robbery and 2 counts of Murder*

6.  (a) What was your plea? (Check one)

    ☒ (1) Not guilty    ☐ (3) Nolo contendere (no contest)

    ☐ (2) Guilty    ☐ (4) Insanity plea

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? *N/A*

AO 241
(Rev. 10/07)

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

    ☒ Jury     ☐ Judge only

7.     Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☐ Yes    ☒ No

8.     Did you appeal from the judgment of conviction?

    ☒ Yes    ☐ No

9.     If you did appeal, answer the following:

(a) Name of court: *South Carolina Court of Appeals*

(b) Docket or case number (if you know): *Unpublished Opinion No. 2007-UP-016*

(c) Result: *Convictions Affirmed*

(d) Date of result (if you know): *January 11, 2007*

(e) Citation to the case (if you know): *State v. Mann, 2007-UP-016*

(f) Grounds raised: *Whether or not the trial court erred by joining both murders into a single trial.*

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Name of court: *N/A*

(2) Docket or case number (if you know): *N/A*

(3) Result: *N/A*

(4) Date of result (if you know): *N/A*

(5) Citation to the case (if you know): *N/A*

(6) Grounds raised: *N/A*

_____

AO 241
(Rev. 10/07)

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): _N/A_

(2) Result: _N/A_

(3) Date of result (if you know): _N/A_

(4) Citation to the case (if you know): _N/A_

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: _Charleston County Court of Common Pleas_

(2) Docket or case number (if you know): _08-CP-10-0057_

(3) Date of filing (if you know): _Dec. 3, 2017_

(4) Nature of the proceeding: _Post-Conviction Relief_

(5) Grounds raised: _Ineffective Assistance of Counsel on a number of grounds_

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?
☑ Yes    ☐ No

(7) Result: _Post-Conviction Application Denied_

(8) Date of result (if you know): _January 26, 2011_

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _South Carolina Supreme Court_

(2) Docket or case number (if you know): _2012-212824_

(3) Date of filing (if you know): _Dec. 4, 2014_

(4) Nature of the proceeding: _Writ of Certiorari_

AO 241
(Rev. 10/07)

Page 4

(5) Grounds raised: _Ineffective Assistance of Counsel in a number of ways. (see attached)_

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: _____

(8) Date of result (if you know): _December 4, 2014, Remittitur Dec. 22, 2014_

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _N/A_

(2) Docket or case number (if you know): _N/A_

(3) Date of filing (if you know): _N/A_

(4) Nature of the proceeding: _N/A_

(5) Grounds raised: _N/A_

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☐ No

(7) Result: _N/A_

(8) Date of result (if you know): _N/A_

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

AO 241
(Rev. 10/07)

Page 5

(1) First petition:    ✓ Yes    ☐ No

(2) Second petition:   ✓ Yes    ☐ No

(3) Third petition:    ☐ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____ N/A _____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** Petitioner was denied his 6 Amed. right to effective assistance of Counsel through counsel's failure to protect his 6 Amed. right to a Public Trial. (SEE attached)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE Attached outlined Grounds

(b) If you did not exhaust your state remedies on Ground One, explain why: N/A - Exhausted

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ✓ No

(2) If you did not raise this issue in your direct appeal, explain why: Could not be raised on Direct Appeal because trial counsel failed to preserve it for Appellate review.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

✓ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

✎AO 241
(Rev. 10/07)

Page 6

Type of motion or petition: *Post-Conviction Application*

Name and location of the court where the motion or petition was filed: *Charleston County*
*Court of Common Pleas*

Docket or case number (if you know): *08-CP-10-0057*

Date of the court's decision: *January 26, 2010*

Result (attach a copy of the court's opinion or order, if available): *Attached*

(3) Did you receive a hearing on your motion or petition?  ☑ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *South Carolina Supreme Court*

Docket or case number (if you know): *2012-212824*

Date of the court's decision: *Dec. 4, 2014, Remittitur Dec. 22, 2014*

Result (attach a copy of the court's opinion or order, if available): *attached*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*N/A*

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: *N/A*

**GROUND TWO:** *Petitioner was denied his 6th Amend. right to effective assistance of trial counsel when trial counsel failed to object to the introduction of a 12-gauge shotgun, and seek suppression of said shotgun that was in no way connected to petitioner. (SEE Attached)*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*SEE Attached outline of Grounds*

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why:   *N/A - exhausted*

_____

_____

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐  Yes     ☑  No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:   *Trial counsel failed to preserve it for direct appellate review.*

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   *Post-Conviction Relief Application*

Name and location of the court where the motion or petition was filed:   *Charleston County Court of Common Pleas*

Docket or case number (if you know):   *08-CP-15-0057*

Date of the court's decision:   *Jan. 26, 2010*

Result (attach a copy of the court's opinion or order, if available):   *(Attached). Petition denied*

_____

(3) Did you receive a hearing on your motion or petition?                     ☑ Yes     ☐  No

(4) Did you appeal from the denial of your motion or petition?                ☑ Yes     ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes     ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   *South Carolina Supreme Court*

_____

Docket or case number (if you know):   *2012 - 212824*

AO 241
(Rev. 10/07)

Page 8

Date of the court's decision: *Dec. 4, 2014, Remittitur Dec. 22, 2014*

Result (attach a copy of the court's opinion or order, if available): *Petition denied. (Attached)*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*N/A*

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two    *N/A*

**GROUND THREE:** *Petitioner was denied his 6th Amendment right to effective assistance of counsel and the right to a fair trial when trial counsel failed to object to the repeated references to his being in a maximum security prison at the time of trial. (See Attached)*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*(See attached outlined GROUNDS)*

(b) If you did not exhaust your state remedies on Ground Three, explain why:    *N/A - Exhausted*

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:    *Trial Counsel failed to preserve for Direct Appellate Review.*

(d)    **Post-Conviction Proceedings:**

AO 241
(Rev. 10/07)

Page 9

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *Post-Conviction Relief*

Name and location of the court where the motion or petition was filed: *Charleston County Court of Common Pleas*

Docket or case number (if you know): *08-CP-10-0057*

Date of the court's decision: *January 26, 2011*

Result (attach a copy of the court's opinion or order, if available): *Denied. (attached)*

(3) Did you receive a hearing on your motion or petition?    ☑ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *South Carolina Supreme Court*

Docket or case number (if you know): *2012-212824*

Date of the court's decision: *December 4, 2014, Remittitur Dec. 22, 2014*

Result (attach a copy of the court's opinion or order, if available): *Petition Denied. (attached)*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*N/A*

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:    *N/A*

**GROUND FOUR:** *Petitioner was denied his 6th Amendment right to the effective assistance of counsel aggravated by and through trial counsel's introducing into evidence and playing before the jury a crime scene horror video of victim being found deceased in a wooded area and having her body manipulated by the Coroner and crime scene personnel. (See attached)*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_SEE attached outline of GROUNDS_

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why:    _N/A - Exhausted_

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:    _Trial counsel failed to_
_preserve it for Direct Appellate Review._

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    _Post-Conviction Relief Application_

Name and location of the court where the motion or petition was filed:    _Charleston County_
_Court of Common Pleas_

Docket or case number (if you know):    _08-CP-10-0058_

Date of the court's decision:    _Jan. 26, 2011_

Result (attach a copy of the court's opinion or order, if available):    _Application denied_
_(See attached)_

_____

(3) Did you receive a hearing on your motion or petition?    ☑ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    _South Carolina Supreme Court_

AO 241
(Rev. 10/07)

Page 11

Docket or case number (if you know): *2012 - 212824*

Date of the court's decision: *Dec. 4, 2014, Remittitur Dec. 22, 2014*

Result (attach a copy of the court's opinion or order, if available): *Denied. (Attached)*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*N/A*

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four: *N/A*

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?    ❏ Yes    ☑ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them: *(1) Prosecutorial Misconduct was not presented*
*due to PCR counsel's failure to do so, ~~that the grounds outside~~*
*~~were the grounds that the judge considered~~*

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which

ground or grounds have not been presented, and state your reasons for not presenting them:

*SEE 13.(a)*

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?    ❏ Yes    ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.    *N/A*

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?      ☐ Yes    ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    *N/A*

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   *O. Ashley Pennington*

(b) At arraignment and plea:   *N/A*

(c) At trial:   *Jennifer Kneece Shealy*

(d) At sentencing:   *Jennifer Kneece Shealy*

(e) On appeal:   *Joseph Savitz, III*

(f) In any post-conviction proceeding:   *Joshua Kendrick and Wesley Locklair*

(g) On appeal from any ruling against you in a post-conviction proceeding:   *Joshua Kendrick and Wesley Locklair.*

AO 241
(Rev. 10/07)

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?         ☐ Yes   ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____ N/A _____

_____

(b) Give the date the other sentence was imposed: _____ N/A _____

(c) Give the length of the other sentence: _____ N/A _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?         ☐ Yes   ☒ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_____ N/A _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in

part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of
the Constitution or laws of the United States is removed, if the applicant was prevented from
filing by such state action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme Court and made retroactively applicable to
cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *Reverse And Remand for a New trial, or vacate convictions*

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *Jan. 5, 2015*     (month, date, year).

Executed (signed) on *Jan. 4, 2015*     (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

## GROUNDS FOR RELIEF:

### GROUND ONE:

MANN WAS denied his 6th Amendment right to the effective assistance of counsel and his right to a Public Trial by and through trial counsel's failure to assert and protect this right when various secret hearings were held in MANN's trial.

### FACTS:

In the course of MANN's trial there were four (4) IN CAMERA hearings held outside of the presence of the jury, press, and even the public. One hearing in particular ("A Witness Intimidation hearing") was held outside the Courtroom, in a large conference room, closed off to the press and public. Numerous witnesses were called in one at a time to testify before the court in regards to improper witness intimidation by the State and it's agents. The court subsequently, SUA SPONTE, ordered the transcripts of this hearing, as well as the transcripts from the three (3) other secret hearings, sealed. These transcripts were subsequently destroyed due to the incompetence of Appellate counsel (SEE GROUND TWENTY).

Sua sponte, the trial court closed this "Witness Intimidation" hearing to the public, and MANN's counsel took no action on MANN's behalf to protect his Public Trial rights. Counsel did not object to the closing on any ground, and more specifically counsel took no steps to ensure that the factors outlined in Waller v. Georgia were weighed on the record so that a reviewing court could determine the appropriateness of the closure. Trial counsel failed MANN in this regard, and many others as follows.

### GROUND TWO:

MANN WAS denied the effective assistance of counsel in violation of the 6th Amendment when trial counsel failed to object to and seek suppression of a 12-Guage Shotgun that was in no way connected to MANN.

FACTS:

In the course of Mann's trial a random, totally unrelated shotgun was introduced into evidence by the state without objection from trial counsel. No chain of custody was shown for this inflammatory weapons, it was not determined to be a murder weapon, nor was it shown by ballistics to be any way connected to the crimes. Trial counsel consistently allowed this irrelevant, inflammatory, and highly prejudicial weapon to be paraded around the courtroom by the state, and even allowed the Solicitor to march and prance back and forth before the jury with this weapon on her shoulder while orating her closing arguement and telling the jury that Mann had this weapon, and had taken it from victim Dante Tobias, without any objection from Mann's counsel.

There was no evidence whatsoever offered in Mann's trial linking this particular shotgun to Mann, the victim's residence, or the alleged robbery. There was no evidence whatsoever offered at trial to link this shotgun in any way, shape, manner, or form to the crimes for which Mann was being tried. Easily avoidable prejudice could have been prevented simply by trial counsel's objecting to this prejudicial evidence coming into play.

GROUND THREE:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment, and denied his rights to a fair trial in violation of the 14th Amendment when his counsel failed to object to the repeated references to Mann's being in a maximum-security prison at the time of trial. From the very outset of trial the jury was told that Mann was serving time at the Lieber Correctional Institution, a local maximum-security prison.

FACTS: At the very outset of Mann's trial, during voir dire, the jury was informed by a potential juror that he used to work at Lieber Correctional Institution, "where Mann is at." Trial counsel made no objections upon the grounds that the entire jury pool had been tainted with irrelevant and unduly prejudicial information. And trial counsel exacerbated this error when throughout the course of

the trial the jury was repeated told by various witnesses that Mann was serving time at Lieber C.I. while he awaited trial. Each time it was brought up or mentioned trial counsel failed to object. Further, trial counsel failed to object to the presence of two(2) Lieber C.I. Transportation guards in visible bullet proof vests with "SCDC" brightly emblazoned on their chests and backs, who sat directly behind Mann each day of the trial, and vicariously clothed Mann in prison garb, and aided in destroying Mann's presumption of innocence. Combined with the repeated references to Mann's status, and location, of incarceration Mann's right to a fair trial was decimated by the many prejudicial inferences of prior bad acts, and the damaging character evidence that Mann's counsel failed to prevent, and at times even seemed to encourage. Counsel's conduct was not part of a valid trial strategy, was unreasonable, and highly prejudicial to Mann.

GROUND FOUR:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment by and through trial counsel's introducing into evidence and playing before the jury a Crime Scene Horror Video of victim Beverly Blake being found deceased in a wooded area and having her body manipulated by the Coroner and Crime Scene personnel.

FACTS:

Trial counsel made a detrimental decision to introduce into evidence and play before the jury a crime scene video of victim Beverly Blake being found deceased in a wooded area and having her blood stained, bullet ridden body moved around and examined by the County Coroner and other crime scene personnel. This very emotional, anger provoking, inflammatory and prejudicial video was an extremely bad decision on trial counsel's behalf. This was not part of a valid trial strategy, and the prejudice to Mann is quite clear.

GROUND FIVE:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment by and through trial counsel's failure to present the testimony of readily available experts in the line of Pathology in reference to the time of death of Beverly Blake.

FACTS:

At Manns trial the time of death for victim Beverly Blake was critical to the states theory of the case as it relates to her murder. There was testimony from the states own witnesses that Mann had alibi from approximately Tuesday of the week of the murders, through his arrest. In order for the state to make a credible argument that Mann murdered Blake her murder needed to have occured on Monday of the week in question. Any later and it would have been almost impossible for Mann to have committed the murder.

Dr. Susan Presnell testified as to the estimated time of death of Blake. She testified that her first opinion on Blake's time of death, based on the condition of the body, was that Blake had only been dead up to a few days from when her body was located. This would have put the time of death squarely within the time period for which Mann had an alibi. Presnell admitted in her trial testimony that she received pressure from law enforcement to give an opinion of the time of death more compatible with law enforcements theory of murder.

According to her trial testimony, Presnell used an alternative theory to determine a time of death on Blake. She used a measurement derived from the potassium levels in Blake's vitreous fluid. This vitreous fluid, located in the eyes, is measured with several different formulas. Presnell testified she was using the latest formula in order to opine a time of death more compatible with law enforcement's theory of the murder.

Though trial counsel was able to make limited points with cross-examination, Presnell was still able to offer the opinion that the time of death was consistent with the murder taking place on Monday night, as reque-

sted by law enforcement.

At Mann's PCR hearing, Dr. Janice Ross of Newberry Pathology Associates testified on Mann's behalf. Dr. Ross is a forensic Pathologist with Board certifications in anatomic, clinical, and forensic pathology. She has been a pathologist for over 30 years and has testified numerous times regarding causes and times of death. She has testified and performed autopsies for various state agencies. Dr. Ross was qualified to offer expert testimony in the field of forensic Pathology.

Dr. Ross testified regarding the use of potassium level in vitreous fluids to determine the time of death. She testified she was aware of the process, but that it was no longer taught and had fallen out of favor as a way to determine time of death. According to Dr. Ross this technique has not been seriously accepted in her field since the 1960's and had not been accepted at all since the early 1980's. Dr. Ross testified, in her expert opinion, vitreous fluid was not an acceptable way to determine time of death, and should not be used to estimate time of death.

This issue was particularly critical to the Defense based on the State's theory as it related to the time of death of Blake. The State's own witness, Kristy Bunch, provided an _Alibi_ for Mann **Almost** the entire week in question. If the time of death were estimated to fall into this time period, the state would have provided the defense with reasonable doubt as to Mann's opportunity to murder Blake. Based on the State's characterization of the two murders as inextricably intertwined, this would have been critical to the defense.

The failure of Mann's counsel to properly investigate and call an expert witness in this matter, to refute the state's expert, who'd provided very questionable testimony was clearly deficient here, and clearly Mann was prejudiced by Defense counsel's failure to appropriately use an expert witness available to them.

## GROUND SIX:

MANN WAS denied the effective ASSISTANCE of COUNSEL IN Violation of the 6th Amendment, And his 14th Amendment right to Due Process AS A result of trial counsel's failure to require the state to meet it's burden of showing a complete chain of custody on the "Vitreous Humor" sample And Testing, And denied MANN his Constitutional rights to be confronted with And cross-examine the evidence And witnesses AgAinst him.

## FACTS:

As Shown Above, time of death WAS A Major issue IN reference to the Murder of Beverly Blake. Her body WAS found on JANUARY 13, 2002, And the Coroner pronounced her deceased Approximately 24-36 hours. LAter, when time of death became A question the Pathologist, Dr. Presnell, extracted a 3-milliliter vial of "Vitreous humor" from the eyes of the deceased. Supposedly, the eye is somewhat protected from decomposition, And time of death could be established by plugging IN the potassium levels from the vitreous humor into certain formulas.

The Vitreous specimen WAS extracted on JANUARY 14, 2002, or JANUARY 15, 2002, And then turned over to the custody And control of Roger Russell, M.D. A toxicologist, on JANUARY 31, 2002, who did not perform the ANAlysis And return the specimen IN A timely MANNer. Dr. Russell WAS unable to perform the ANAlysis due to losing his contract with ANother lab Allegedly performing the ANAlysis. The Coroner had to issue A Subpoena on Dr. Russell to secure the return of the vitreous specimen, And did not receive it back until February 22, 2002. The Pathologist, Dr. Presnell, testified As to the testing results And her opinion that they supported A window of death of up to six (6) days, And supported the State's theory. However, Dr. Presnell could only testify to what She'd read IN the reports. The individual(s) that conducted the ANAlysis And Arrived At the results, Dr. Russell, And the unnamed "lab", were not before the Court, And could not be cross-examined About the methods used, their qualifications to make the ANA-

6.

lysis, or their ability to interpret the results.

Where tests or analysis are conducted the cogent elements are the results, the methods used, and the qualifications of the tester. The methods, and the qualifications of the tester give the results their veracity. Dr. Presnell was a stranger to the evidence bearing on the validity of Dr. Russell's, and whatever lab personnel's report and testing, as Dr. Presnell knew nothing save through hearsay.

Where the results of tests or analyses are offered to prove an essential element of a crime, such results must be substantiated by the person who conducted the tests or analyses. Otherwise the effect of their admission would be to allow a witness to testify without being subject to cross-examination, and thus deprive the accused of his Constitutional rights to be confronted with and cross-examine the witnesses and evidence against him. Mann's counsel took no steps to secure and protect these rights on his behalf.

Furthermore, where the analyzed substance has to pass through several hands, the evidence must not leave it to conjecture as to who had the substance and what was done with it between the testing and the analysis.

There's no evidence in the record here identifying the persons who handled the vitreous fluids from the time from the time it was drawn until the time it was tested. Trial counsel failed to object to its introduction and place the state to its burden of proving a complete chain of custody prior to giving evidence upon the results. And by failing to put the state to their burden, and by allowing Dr. Presnell to testify to what only Dr. Russell and the lab personnel could have competently testified to, trial counsel failed Mann in his 6th Amendment rights to confront and cross-examine the evidence and witnesses against him and his 14th Amendment rights to due process.

GROUND SEVEN:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment as a result of trial counsel's failure to challenge and seek suppression of Mann's post-arrest statement illegally coerced from him upon arrest.

FACTS:

Mann was arrested on Monday January 15, 2002, and taken into custody along with his then girlfriend, Kristy Bunch. Mann and Bunch were immediately separated and placed in separate areas. Mann was placed in an interrogation room leg and wrist manacled painfully tight to a chair. A camera was mounted to the top right hand corner of the room. Mann initially remained silent, and had nothing to say to the detectives about the crimes at hand. Mann was subsequently repeatedly threatened with various forms of incarceration and imprisonment, death, sexual violence, and was at one point sexually assaulted by one of the detectives. None of this interrogation was audio or video recorded, despite these recording methods being readily available.

The detectives illegally used Mann's girlfriend and her children against him by threatening to place criminal charges against Bunch and having her children taken by DSS. Eventually, Mann agreed to give a statement in exchange for the release of Bunch, being allowed a visit with her prior to her release, and that the police leave her and her children alone. Bunch was then brought to visit with Mann in the interrogation room and subsequently released. Mann the gave a perfunctory statement which was written by Detective Robert Walker in more of Walker's words than Mann's. This statement alludes to nothing in regards to the death of Beverly Blake, but places Mann at the scene of the Murder of Dante Tobias, and provided the initial grounds for Mann's first Murder charge and the alleged Armed Robbery.

At the Jackson v. Denno hearing held on May 12, 2003, Mann's

8.

counsel failed to seek suppression of this statement on the grounds that it was illegally coerced from Mann by and through improper threats, and intimidation, and inducements. This statement was subsequently used against Mann at trial, with trial counsel objecting to it's introduction into evidence.

Mann's counsel was made well aware of the circumstances of Mann's arrest and interrogation by Mann and Bunch both, and could have easily placed both on the stand at the <u>Jackson v. Denno</u> hearing. Counsel also had a letter written by Bunch to Mann right after Mann's arrest, and transcripts of telephone calls between the two of them detailing the circumstances of their arrest and interrogation that counsel could have used as evidence to back up Mann's claims to support the suppression of Mann's statement, and, as the record clearly reflects, counsel made no attempt to suppress the statement.

At Mann's PCR hearing in 2011, trial counsel admitted to recalling Mann informing him of the sexual threats and sexual assault by the Detective. Investigator Dale Davis, who worked on Mann's case with his attorneys recalled being informed of the threats made by law enforcement. But no valid trial strategy was articulated by counsel for not aggressively pursuing suppression of Mann's statement.

## GROUND EIGHT:

Mann was denied the effective assistance of trial counsel in violation of the 6th Amendment as a result of trial counsel's failure to object to the erroneous allegation of an "excited utterance" manufactured to the court by Detective Robert Walker.

## FACTS:

On the morning of January 22, 2002, Detective Robert Walker checked Mann out of the Charleston County Detention Center (CCDC) to have hair and blood samples taken from Mann at Charleston Memor-

ial Hospital (CMH). In route, Det. Walker started trying to interrogate Mann about the still unsolved murder of Beverly Blake (which Mann then and now denies any knowledge of) and made the accusation that they had found Mann's hair on Blake's person (which was untrue) and said that's why Mann was being transported to **CMH** for hair samples to be taken. Mann told Det. Walker that Blake's hair could easily be on his clothing because he'd hugged Blake the last night they'd been together, and hair clings to clothings, so that **MEANt** nothing. Walker later twisted what Mann had said to him and claimed that Mann just spontaneously uttered," I already told you her hair was going to be on me, I hugged her that night."

This statement was brought to the court's attention in the May 12, 2003 <u>Jackson v. Denno</u> hearing, in which it was ruled admissible pursuant to <u>Rule 803(2) S.C.R.E.</u>, as an "excited utterance." However, if trial counsel had allowed Mann to testify as to the events in full and inform the court as to the totality of the circumstances, instead of allowing the court to run with Det. Walker's version, there's a reasonable probability that the alleged "excited utterance" would have been disallowed and Mann would have had one (1) less piece of harmful evidence against him.

## GROUND NINE:

Mann was denied his 6th Amendment right to effective assistance of counsel as a result of trial counsel's failure to object to drug related and other inadmissible prior bad acts testimony admitted through State's witness, Kristy Bunch.

## FACTS:

Initially, Kristy Bunch was very supportive of Mann, then flipped on him after a dramatic fall-out between the two of them. Bunch then testified against Mann at trial and stated that she did so out of anger at Mann. At

trial, the State elicited from Bunch that Mann was allegedly on probation, had warrants out for his arrest, had just "busted up someone's house" and was "all ramped up" about it, that he was trying to organize drug activity from within the prison system, and he was trying to reach out to officers and judges in the system.

Crimes must be strictly scrutinized before their admission, since the inevitable tendency of such evidence is to raise legally spurious presumptions of guilt in the minds of the jurors. This jury, who'd already been told in <u>voir dire</u> that Mann was a convicted felon confined to a popular local maximum-security prison, was further tainted with irrelevant, inflammatory, and unduly prejudicial information.

The right to effective assistance of counsel is recognized not for it's own sake, but because of the effect it has on the accused's ability to receive a fair trial. Mann was denied this right by and through trial counsel's failure to properly act as his advocate and failing to make the proper objections.

## GROUND TEN:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment when trial counsel failed to object to the state's improperly arguing the guilty pleas of Mann's co-defendants, Michael Crumb and Eric Zack, as evidence to infer guilt upon Mann, and commenting upon Mann's exercising his constitutional rights to a jury trial, and to put the state to it's burden of proving him guilty beyond a reasonable doubt.

## FACTS:

During the State's closing the Solicitor stated (without objection from Mann's counsel), "If a crime is committed by two or more persons... the act of one is the act of all. This is <u>true</u> if there are two people or more than two people involved in the crime. <u>Eric Zack and Michael Crumb pleading guilty. The hand of one is the hand of all</u>"(emphasis added). The

Solicitor went on to state, "The Defendant went to rob Dante Tobias. He went to pick up Beverly Blake. It was a mixed motive, no doubt, but one he felt like he needed a gun for. And one that Eric Zack and Michael Crumb have take responsibility for."

It is impermissible to emphasize the guilty pleas of witnesses as substantive evidence of guilt of a defendant charged with the same or a similar crime. And the improper use of a co-conspirator's convic-tion infringes upon the principle that the central aim in a criminal trial is to decide the factual question of the defendant's guilt or innocence. And by emphasizing the pleas of guilt of the two co-defendants, the Solicitor interjected improper evidence and references into the case hoping to convict Mann based not on the evidence presented at trial towards his guilt or innocence, but instead sought a conviction based on the idea that if Mann's co-defendants had pled guilty, the Mann must be guilty as well. Thus, striking an impermissible "foul blow."

Further, the solicitors' stating that Mann had not "taken respo-nsibility" for the crimes charged was an improper reference to Mann's exercising his constitutionally guaranteed right to a trial by jury, and his right to put the state to it's burden of proving his guilt beyond a reasonable doubt. For it is impermissible for the state to comment upon a Defendant's exercise of a Constitutional right. However, unfortunately for Mann, his trial counsel testified at the PCR hearing that she did not hear or think of any of these comments by the state as being improper, when they clearly are.

GROUND ELEVEN:

Mann was denied his right to effective assistance of counsel in vio-lation of the 6th Amendment by and through his trial counsel's failure to object to the prejudicial hearsay statements and improper corroboration testimony of state's witnesses Dustin James and Maria Jacques.

12.

## FACTS:

On direct examination, state's witness Dustin James was asked if he'd heard anything about victim Blake. Dustin answered, "I heard that her roommate was dead and her and [MANN] were on the run." No objection was made by Mann's counsel. The next state's witness Maria Jacques, was asked if Dustin James had given her any instructions, and, without objection from Mann's counsel, Maria replied, "Yes, ma'am. Dustin suggested that I stay away from [MANN] because he told [MANN]--[MANN] told Dustin in the bathroom before the fight that he killed both, I don't know [BLAKE] and the guy." The Solicitor then asked Maria if she'd heard anything else about [BLAKE] or anyone involved with her and she stated, without any objection from trial counsel, "I heard that [MANN] and her were missing, or whatever, that she was last seen with him."

None of the above outlined testimony falls into any of the hearsay exception categories, and only served at trial to paint Mann in an improper and unfair light. This prejudicial hearsay testimony cannot be said to be harmless beyond a reasonable doubt, especially when viewed cumulatively with previously outlined trial errors of Mann's trial counsel.

## GROUND TWELVE:

Mann was denied his right to the effective assistance of counsel in violation of the 6th Amendment as a result of trial counsel's failure to object to the Solicitor's improperly commenting upon, vouching for, and placing the imprimatur and prestige of the government behind the state's law enforcement witnesses, as well as the state's case.

## FACTS:

In closing, the Solicitor stated, "And think about whether or not Detective Walker in law enforcement for years; Sergeant Presnell in law enforcement for years; Deputy Coroner Rae Wooten, who has been doing

this for years; Erin Presnell, the forensic pathologist, doing this for years. They are going to stake their careers and their reputations in order to frame some innocent man?" Mann's counsel lodged no objection. The Solicitor went on to state," So much momentum that all of these professionals are going to stake their careers on changing the evidence?" Mann's counsel lodged no objection here. Then the Solicitor stated," And then they bring it to us, the Solicitor's office, and oh, we jump on board to save them." Again, no objection.

It is particularly improper, indeed, pernicious, for a prosecutor to seek to invoke... the sanction of the government itself as a basis for convicting a criminal defendant. The prosecutor's vouching for government witnesses vests with them the imprimitur of the government, and may induce the jury to trust the government's judgement rather than its own view of the evidence. The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says.

The Solicitor was entitled to argue that the State's law enforcement witnesses had no reason to lie, but she went too far in placing the imprimitur and prestige of the government behind their testimony, and then invoking her own oath of office to defend their credibility. And Mann's trial counsel was ineffective for failing to object to this prejudicial testimony and seek curative instruction to the jury.

GROUND THIRTEEN:

Mann was denied his right to the effective assistance of counsel in violation of the 6th Amendment when trial counsel failed to call relevant witnesses on his behalf by and through trial counsels failure to locate and call Jessica Still-Meddaugh to testify on Mann's behalf, and to object to improper comments from the state.

FACTS:

State's witness Krystal Lackey committed perjury for the State on

more than one instance. Lackey claimed that Mann came into her home on Tuesday January 15, 2002 (a day Mann was already in jail) and confessed to both murders, not only to her, but in a room full of approximately ten (10) other individuals. However, the State called none of these alleged witnesses to testify in Mann's trial and support Lackey's perjured testimony.

In closing, Mann's counsel failed to object when the solicitor stated, "Like it or don't, Krystal Lackey does the right thing. You think about that when you think about her credibility. Where are all these other people at the party? I don't know. You certainly saw they didn't have a problem calling in two guys from DDC to talk about DDC and what happened during the fight. They didn't have a problem doing that." This was clearly a comment upon Mann's failure to call witnesses on his own behalf. Yet, Mann had the right to remain silent and put the State to it's burden, and this was clearly an improper comment upon his exercising that right, which is impermissible.

Further, the Solicitor would not have been able to make these improper comments if trial counsel had conducted a proper investigation into this matter on Mann's behalf and presented the proper witnesses. At the PCR hearing Mann called witness Jessica Still-Meddaugh, who was at the house the night Lackey claims that Mann showed up to briefly. Jessica testified that Mann did not make any of the statements that Lackey claims, and that Mann did not even enter the house that night. If Mann never entered the house, it would have been impossible for the witness to hear him make any of these statements. Jessica's testimony would have called Lackey's credibility into doubt and this could have led to a different trial result.

Exacerbating the above errors. Trial counsel failed to utilize Lackey's criminal conviction for writing fraudulent checks pursuant to Rules 608 and 609 (a) (1) (2) to impeach her credibility. In sum, trial counsel failed to act as a zealous advocate for her client, which led

15.

to an unjust trial/result.

## GROUND FOURTEEN:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment and denied due process in violation of the 14th Amendment as a result of trial counsel's failure to properly and adequately object to the Solicitor's spreading the wings of her personal status as a "spokes woman" for the people and diluting the principle that guilt may not be established by "arousing the passions" of the jury.

## FACTS:

Michael Crumb, who was under plea agreement to testify against Mann, was a star witness from the state. The Defense presented William Woodson, who discredited Crumb. Upset by this event, the state objected to Woodson's testimony, claiming, to the contrary, that the defense had not laid the foundation for Woodson's testimony, and Crumb was re-called for the defense to re-lay a foundation for Woodson's testimony. The state then deployed a diversionary tactic, with leading, improper commands directed not to the jury — the triers of fact — but to the victim's families, and the community at large. The Solicitor told Crumb, who's sentencing depended upon pleasing the Solicitor, "You need to look at these people right here, Dante Tobias' parents and tell them — — "; then again, "Look at them"; then, "who Shot him?" "Anthony Mann." Trial counsel objected, but said nothing more than "objection".

This action by the state was an egregious violation of Mann's right to a fair trial and was designed to elicit and incite the passions of the jurors, and divert their attention away from the lies and deception of the state's star witness, Michael Crumb, and focus it on the families grieving for the loss of their children and loved

ones. The Prosecutor's conduct amounted to a denial of Due process. And trial counsel failed to lodge an adequate objection to this misconduct and preserve the error for direct appellate review. Unless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review. And an objection must be made on a specific ground. A general objection which does not specify the particular ground on which the objection is based is insufficient to preserve a question for review. Trial counsel did not adequately object to preserve this error for direct appellate review. Counsel failed in their role as a zealous advocate for the client.

GROUND FIFTEEN:

Mann was denied the effective assistance of counsel, in violation of the 6th amendment, as a result of trial counsels failure to present an alibi defense and request an alibi instruction to the jury as part of a valid trial strategy for the murder of Blake.

FACTS:

No precise time of death was established for Blake. Testimony of the County Coroner, Rae Wooten, placed the time of death at 24-36 hours from the discovery of Blake's corpse. The pathologist gave a window of death at approximately 4-6 days. The testimony of States witness Kristy Bunch, and that of Det. Robert Walker gave ample evidence of alibi of Mann for the murder of Blake. Trial counsel failed to argue this to jury, or request an alibi instruction to the jury. The failure to give an alibi charge, where evidence of alibi is presented and defendant claims to be at another place is reversible error. Had counsel not failed to present an alibi defense, request an alibi instruction, there is a reasonable likelihood that Mann would have been exonerated of the murder

17.

of Blake, especially considering that Mann initially had a hung jury on this charge. Again trial counsel failed Mann.

## GROUND SIXTEEN:

Mann was denied his 6th Amendment right to the ~~effective~~ assistance of counsel as a result of trial counsel's advising him to waive his right to testify on his own behalf, and forfeit taking the stand on his own behalf.

## FACTS:

Mann was charged and on trial for armed robbery and two (2) counts of murder. There was no physical or forensic evidence linking Mann to any of the alleged crimes. The entire case hinged upon testimony alone. This was a credibility case. The State present twenty-six (26) witnesses. Many of which were associates of Mann. Everyone told their version of the story, while, upon the advice of counsel, Mann foolishly remained silent. The jury needed to hear Mann talk. They needed his side of the story to discern the true pattern of the Arubix spun by the solicitor. Had the jury heard Mann's version there is a reasonable probability they would have ruled in his favor. Again, trial counsel failed Mann in their role as a zealous advocate for their client.

## GROUND SEVENTEEN:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment, as a result of trial counsel's failure to object to the irrelevant testimony of Krystal Lackey's step-father Rodderick T. MacBride, and failing to utilize this witness to expose the perjury of Krystal Lackey, his step-daughter of 17 years.

FACTS:

Lackey was a key witness for the state, and Lackey provided damaging perjured testimony against Mann (see Ground Thirteen). In order to boost Lackey's credibility the state placed her step-father, Rodderick T. MacBride (a former Police officer) on the stand. The good standing former cop, married for 17 years, who maintained contacts with his former comrades on the force served no other purpose than to improperly bolster Lackey's testimony and credibility. Trial counsel should have objected to this witness and the state's improper methods calculated to produce a wrongful conviction. Furthermore, trial counsel failed to even cross-examine this witness to expose Lackey as a perjurer who's testimony was known by the state to be false. Again, counsel's deficient performance prejudiced Mann.

GROUND EIGHTEEN:

Mann was denied the effective assistance of counsel in violation of the 6th Amendment as a result of the overwhelming cumulative prejudicial effect of each of the enumerated errors committed by trial counsel which also effectively denied Mann his most fundamental rights of due process, and a fair and public trial.

FACTS:

In sum, Mann's trial counsel failed to: Protect Mann's right to a Public Trial; Object to Mann's status as a maximum-security prisoner and convicted felon coming into play, and preserve his presumption of innocence; Prevent the jury from watching a crime scene horror video of victim Beverly Blake's death discovery; Challenge Mann's involuntary post-arrest statement; Object to the alleged "excited utterance" and seek it's suppression; Object to the introduction of the mysterious 12-Guage Shotguns; Object to the improper prior bad act testimony of Kristy Bunch; Object to the inadmissible hearsay testimony of Dustin James and Maria Jac-

19.

ques; Call relevant witness Jessica Still-Meddaugh to the stand to contradict and impeach the false testimony of Krystal Lackey, to use Lackey's criminal conviction for fraudulent check writing to impeach her, and failing to object to the improper corroboration testimony of Lackey's step-father, Rodderick T. MacBride; Object to the states' failure to prove a complete chain of custody on the "vitreous fluid" testing on Blake, and therefor denying Mann his rights to be confronted with and cross-examine the evidence and witnesses against him; Present an alibi defense and request an <u>alibi</u> instruction for the murder of Beverly Blake; Object to the states using the guilty pleas of Mann's co-defendants to inter guilt upon Mann; Object to the states vouching for and placing the imprimatur and prestige of the government behind their law enforcement witnesses; Object to the states improperly commenting upon Mann's exercising his rights to a jury trial and putting the State to its burden of proof; To adequately object to the states using Michael Crumb to arouse the passions of the jury; and, Advisising Mann to waive his right to take the stand and testify on his own behalf. Mann was denied the effective assistance of counsel due to the cumulative effect of counsel's errors, and the result is a verdict unworthy of confidence.

<u>GROUND NINETEEN</u>:

    The State was in misconduct and violated Mann's rights to due process under the 14th Amendment when the Solicitor knowingly introduced the perjured testimony of Krystal Lackey (SEE (GROUNDS THIRTEEN AND SEVENTEEN) and failed to correct false testimony when it appeared.

<u>FACTS</u>:

    The State presented Krystal Lackey as a good samaritan "doing the right thing," and who had no interest in testifying

falsely. However, Lackey's testimony did not fall within the state's theory or conform to the evidence. Her lies were open and clear to anyone with knowledge of the truth, and even revealed in the testimony of her own step-father who was used to improperly boost Lackey's credibility.

Lackey was charged with burglary related offenses in Berkeley County, S.C., which is prosecuted by the same Circuit Solicitor as is Charleston County, S.C., and Lackey used this to turn Mann's misfortune into her own personal benediction. Through the Solicitor's office Lackey talked her way into the S.C. State Pretrial Intervention Program (P.T.I.) pursuant to §17-22-30. At trial Lackey admitted that she was going through the PTI program at the time of her testimony. However, when trial counsel asked Lackey if the Solicitor had to agree for her to go through the PTI program Lackey answered, "No," leaving the jury the impression that this witness was under no rule of the solicitor. Yet, §17-22-30 specifically places sole authority to make the final determination regarding acceptance of any offender into this program. Unknown to the jury, the Solicitor had full power and authority to control the outcome of Lackey's future in this program. And the Solicitor had a duty to make sure that the jury was aware of this.

It is clear that the deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. And when the reliability of a given witness may be well determinative of guilt or innocence, the prosecutor's nondisclosure of evidence affecting credibility justifies a new trial, under the due process clause, irrespectively of the prosecution's good faith or bad faith.

GROUND TWENTY:

MANN was denied his 6th Amendment right to the effective assistance of appellate counsel as a result of appeal counsel's failure to motion the court to unseal sealed portions of Mann's trial transcript, and properly advise Mann of his rights and correct procedures.

FACTS:

MANN has demonstrated much prejudice from the missing portions of Mann's transcript from the four (4) secret hearings held in the course of Mann's trial. When Mann submitted his direct appeal his appellate counsel had a duty to motion the court to unseal the sealed portions of Mann's transcript and review them for reversible error and appellate counsel failed in this duty. Even with Mann's specifically writing to counsel and advising him to do so. Due to appellate counsel's failure to order these transcripts they were destroyed prior to Mann having a post-conviction relief hearing, so these transcripts were unavailable to Mann then and now.

The prejudice arises from Mann's losing out on appellate arguments based on these hearings; not having them available for his Post-Conviction for his Post-Conviction Relief hearing, or the present Habeas action; and, more specifically, from raising the issue of improper witness intimidation by the government. One would normally have witnesses to recall to speak about the lost transcripts; however, in this case, which is now 13 years old, the one available witness was Mann's trial counsel who developed a very selective memory at the PCR hearing.

Respectfully Submitted,

Matt L. M