NC
AG
AT
SOL
GS

STATE OF SOUTH CAROLINA          )      IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF CHARLESTON             )      2008-CP-10-0057
                                 )
Anthony Mann, #242498,           )
                                 )
                Applicant,       )
                                 )          **AMENDED**
        v.                       )      **ORDER OF DISMISSAL**
                                 )
State of South Carolina,         )
                                 )
                Respondent.      )
                                 )
_____  )

2012 JAN 26  AM 11:38
JULIE J. ARMSTRONG
CLERK OF COURT
**FILED**
BY

        This matter comes before the Court by way of an application for post-conviction relief

(PCR) filed January 7, 2008.  The Respondent made its Return on February 10, 2009.  An

evidentiary hearing into the matter was convened on November 14 and 18, 2011 at the

Charleston County Courthouse.  The Applicant was present at the hearing and represented by

Wesley Locklair, Esquire and Joshua Kendrick, Esquire.  Matthew J. Friedman, Esquire, of the

South Carolina Attorney General's Office represented the Respondent.

        The Applicant testified on his own behalf at the PCR hearing.  Applicant's trial counsel,

Jennifer Shealy, Esquire, co-counsel Beattie Butler, Esquire, investigator Dale Davis, Dr. Janice

Ross, Matthew Radford, Terrell McCoy, and Jessica Still also testified at the hearing.  This Court

had before it the records of the Charleston County Clerk of Court regarding the subject

convictions, the Applicant's records from the Department of Corrections, the trial transcript, the

direct appeal records, the current PCR application, the amended application, the State's Return,

Krystal Lackey's NCIC report, Dale Davis' witness list, letters from Applicant to appellate

counsel, letters from trial counsel to Applicant, and notes from Applicant to trial counsel.



## PROCEDURAL HISTORY

The Applicant is presently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Charleston County. The Applicant was indicted at the July 2002 term of the Charleston County Grand Jury for armed robbery (2002-GS-10-4413) and two counts of murder (2002-GS-10-4414, 4415). Jennifer K. Shealy, Esquire, and Beattie Butler, Esquire, represented the Applicant. The Applicant proceeded to trial on September 15-24, 2003, after which a jury found him guilty as indicted. On September 24, 2003, the Honorable Daniel F. Pieper sentenced the Applicant to confinement for thirty (30) years for armed robbery and life for each count of murder.

A timely Notice of Appeal was filed on Applicant's behalf and an appeal was perfected. Joseph Savitz, Esquire, of the South Carolina Commission on Indigent Defense, represented Applicant on appeal. Following full briefing, the South Carolina Court of Appeals affirmed Applicant's conviction and sentence. State v. Mann, Op. No. 2007-UP-016 (S.C. Ct. App. filed January 11, 2007). The Remittitur was issued February 2, 2007.

## ALLEGATIONS

The Applicant alleges he is being held in custody unlawfully for the following reasons:

1. Ineffective assistance of trial counsel in that counsel committed a multitude of errors, including failure to call relevant witnesses.
2. Actual innocence.

In his amended application, he alleges the following grounds for relief:

1.  That trial counsel was ineffective for failing to object to testimony regarding Applicant being a convicted felon and being housed at Lieber Correctional Institution and for allowing prison guards to sit in such close proximity to Applicant that Applicant was effectively in prison garb.

2.  That trial counsel was ineffective for failing to properly challenge the voluntariness and admission of Applicant's statements to law

2

enforcement, including, but not limited to, his post-arrest statement and alleged "Excited Utterance" to Detective Robert Walker.

3.    That trial counsel was ineffective for failing to request a finding by the Court that Applicant's statement was taken in compliance with <u>Miranda</u> and for failing to request a jury instruction outlining the jury's duty to determine the voluntariness of Applicant's statement.

4.    That trial counsel was ineffective for failing to object to the admission of the shotgun in this case when there was no link to the gun and the alleged crime.

5.    That trial counsel was ineffective for playing the "crime scene" video for the jury and introducing it into evidence.

6.    That trial counsel was ineffective for failing to object to evidence of drug use and other drug activity, other prior bad acts and other impermissible character evidence.

7.    That trial counsel was ineffective for failing to object to hearsay testimony offered by State's witnesses Dustin James and Maria Jacques.

8.    That trial counsel was ineffective for failing to object to improper character evidence, bolstering and collaboration offered through State's witness Rodderick MacBride, and for failing to properly cross-examine MacBride for impeachment of Krystal Lackey.

9.    That trial counsel was ineffective for failing to object to the admission of the vitreous humor sample without a complete chain of custody, nor did counsel interview or call the actual examiner as a witness.

10.    That trial counsel was ineffective for failing to protect Applicant's right to a public trial by not objecting to four in camera hearings and requiring the Court to make specific findings on the record.

11.    That trial counsel was ineffective for failing to investigate the DNA evidence in this case as potentially exculpatory to Applicant.

12.    That trial counsel was ineffective for failing to properly cross-examine and impeach State's witness Mervin Mcnair.

13.    That trial counsel was ineffective for failing to present an alibi defense and request an alibi jury charge from the Court.

14.    That trial counsel was ineffective for failing to impeach State's witnesses

3

Nicole O'Connell, Tiffany Mercado and Krystal Lackey with their prior convictions and other potential evidence.

15. That trial counsel was ineffective for failing to properly show the jury the ability of State's witnesses Eric Zack and Michael Crumb to communicate in the Charleston County Detention Center and for failing to object to impermissible comments by the prosecutor for referring to Defense witness William Woodson as a "squirrely looking, mentally ill child molester."

16. That trial counsel was ineffective for failing to re-challenge the trial court's pretrial rulings on joinder at the start of the trial and after the State failed to produce an eyewitness as alleged to the Court.

17. That trial counsel was ineffective for convincing Applicant not to testify when he originally wanted to testify; however, Applicant asserts but for the advice of counsel, he would have testified.

18. That trial counsel was ineffective for failing to object to the Solicitor's arguments that two co-defendant's had pled guilty and taken responsibility for their actions and that the hand of one is the hand of all, thus impermissibly commenting on Applicant exercising his constitutional rights to a jury trial and to remain silent.

19. That trial counsel was ineffective for failing to object to the State improperly bolstering, vouching for and attempting to place the prestige of the government behind the State's case.

20. That trial counsel was ineffective for failing to object to the State commenting on Applicant exercising his constitutional rights to a jury trial and to remain silent, including but not limited to comments about why the Defense did not call certain witnesses.

21. That trial counsel was ineffective for failing to object to the State invoking the passion of the jury by making impermissible comments in closing regarding the victims' families, and when objections were made and sustained for failing to request that the questions and answers be stricken and a curative instruction given.

22. That trial counsel was ineffective for failing to object to the malice instruction and seek an instruction that in cases of self-defense, a weapon can be possessed without malice.

23. That trial counsel was ineffective for failing to object to improper arguments during Solicitor's closing.

4

24.  That trial counsel was ineffective based on the totality of the circumstances.

25.  That trial counsel was ineffective for failing to properly cross examine State's witnesses Eric Zack and Michael Crumb regarding their potential plea deals and sentencing; in that the State intentionally withheld sentencing until after trial.

26.  That trial counsel was ineffective for failing to object to there not being a properly impaneled, recorded and conducted grand jury that convened in this case.

27.  That Appellate Counsel was ineffective for failing to argue that the trial court erred in admitting the vitrous humor analysis.

28.  That Appellate Counsel was ineffective for failing to argue that the trial court erred in admitting color autopsy photos of the victims.

29.  That Appellate Counsel was ineffective for failing to argue that the trial court erred in denying Applicant's motion for a mistrial based on in admissible character evidence and prior bad acts.

30.  That Appellate Counsel was ineffective for failing to argue that the trial court erred in failing to request the sealed portions of the transcript and utilize them in an appeal.

31.  That Appellate Counsel was ineffective for failing to file a petition for writ of certiorari to the South Carolina Supreme Court.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

Beattie Butler, Esquire, testified that he sat second chair with Jennifer Shealy and had a limited role during the trial. He testified that he handled the pre-trial joinder argument and cross-

5

examined a jailhouse informant who testified at trial. He testified that he did not recall raising the joinder issue later in trial, and he did not think the issue needed to be renewed.

Matthew Radford testified that he is currently serving 45 years in prison for murder. He testified that he heard Michael Crumb and Eric Zack talking in lockup in 2003, and Mr. Crumb said that he felt pressured by the police to put the blame on Applicant. He testified that he was a few cells down from Mr. Crumb and Mr. Zack. Mr. Radford testified that he did not know Applicant at the time, but he has known Applicant since 2004 and he told Applicant what Crumb had said. He testified that he is incarcerated at the same institution as Applicant, but they do not have any way to communicate with each other. In addition to murder, Mr. Radford acknowledged that he has prior convictions for armed robbery, arson 2nd degree, possession of a weapon during a violent crime, burglary 1st degree, and criminal conspiracy.

Terrell McCoy testified that he is currently serving 40 years for murder. He testified that he met Applicant in lockup a few months ago. Mr. McCoy testified that he and Applicant both knew one of the victims, Beverly Blake. He asserted that he met Ms. Blake at Northwoods Mall on January 8, 2001, which was his son's birthday. This date was also between the time when Dante Tobias was murdered and when Ms. Blake's body was found.

Jessica Still testified that he knows the Applicant through her boyfriend at the time of the incident, James Wyndham. She testified that she was at a party in January 2002, and she does not recall the exact date or if the party was before or after the murder occurred. She testified that she heard about the murders a week after the party. Ms. Still testified that Applicant came to the door and was looking for her boyfriend. She asserted that her boyfriend and Applicant then spoke outside, and Applicant never came inside the house. She testified that she did not know what Applicant and her boyfriend were speaking about, and she has not

6

communicated with Applicant since the trial.

Trial counsel, Jennifer Shealy, Esquire, testified that she did not recall how close the Lieber guards were sitting to Applicant during the trial. She asserted that there was no mention of Applicant being convicted of anything, and he was not in prison garb or handcuffs. She testified that she met with Applicant an adequate number of times, including several times with her investigator Dale Davis. She testified that Applicant was at Lieber during the entire time that she represented him. Counsel testified that she reviewed the Rule 5 with Applicant and made a list of everyone that they needed to speak with before trial. She testified that she did not object when a potential juror stated "I used to work for SCDC where he's at" because she did not want to draw attention to it. Counsel testified that she did not recall why she did not object to the introduction of the shotgun, although she recalled that there was some reference in Applicant's statement that a shotgun was taken from the first victim's residence. She testified that she introduced the crime scene video of the second victim because it gave the jury information about the condition of the victim's body. She testified that she was trying to show the jury that the victim was killed later than January 7. Counsel testified that she tried to show that the victim's body was dry even though it had been raining that week and the surrounding area was wet. She asserted that she wanted to distance the second victim's time of death from the first victim's time of death.

Counsel testified that Kristy Bunch was initially supportive of Applicant, but then she flipped and testified against Applicant. She testified that Ms. Bunch was the only potential alibi witness that Applicant told her about. She testified that Applicant wrote Ms. Bunch a letter in which he asked her to testify that they were together from 9:00 Monday, January 7, 2002 until Thursday night, January 10, 2002. Counsel testified that she did not object to Rodderick

7

MacBride's testimony because she did not think his testimony was bolstering his stepdaughter Krystal Lackey's testimony. Counsel asserted that Mr. MacBride, a former police officer, was merely setting out the timing of when Krystal called the police, and she did not think she had any basis to object to that testimony. She did not believe the testimony was overly relevant or harmful to Applicant.

Counsel testified that she retained two experts, one from Kentucky and one from Hawaii, and both experts indicated that they could not give an opinion on time of death without looking at the fly eggs so she could not call either expert as a witness at trial. She asserted that she was able to cross-examine the State's expert, Dr. Presnell, and she got Dr. Presnell to admit that there were other formulas that could produce a different time of death and that the vitreous fluid was not an exact science. Counsel testified that she did not object to the solicitor's closing when she called William Woodson "squirrely" and a "child molester" because at the time she did not think it was objectionable. She testified that she also did not object to the State's closing argument when the solicitor referenced Crumb and Zack taking responsibility because she did not believe it was a constitutional violation. She was able to cross-examine Zack and Crumb about pleading guilty. Counsel testified that she did not believe the solicitor improperly bolstered the testimony of law enforcement or the expert witness, and she was able to attack law enforcement in her closing argument. She asserted that the solicitor's comment on Applicant not calling any witnesses came close to burden shifting, but she did not believe it crossed the line of shifting the burden to the Applicant. Counsel testified that she believed that the joinder issue was renewed after the State rested.

Counsel testified that there were a few objections she could have made to preserve certain issues, but she does not know if any objections would have made a difference in the outcome of

the trial. She testified that she probably should have requested a jury charge on the voluntariness of the statement.

Dr. Janice Ross testified that she is board certified in forensic pathology and has testified as an expert in court more than 70 times. She testified that she reviewed the autopsy report. Dr. Ross asserted that she conducts 800 autopsies a year and always collects vitreous fluid, but she has never used vitreous fluid to determine time of death. She testified that there are too many variables to determine a time interval, and it was her opinion that the test is unreliable.

Dale Davis testified that she was retained by the Public Defenders office as an investigator. She testified that she did a chronology of all the police reports and made a list of witnesses. Ms. Davis testified that she met with Applicant several times at Lieber Correctional Institution. She testified that received her information from Applicant, Ms. Shealy, and the police reports. She testified that some witnesses changed their testimony and were no longer willing to cooperate. Ms. Davis asserted that Kristy Bunch was originally an alibi witness, but she flipped on them. She testified that she was not aware of any other potential alibi witnesses. Ms. Davis testified that she spent over 400 hours investigating this case. She testified that she has done investigative work on 30-35 death penalty cases.

Applicant testified that Ashley Pennington was the first attorney to see him and then he next saw Jennifer Shealy. He testified that Ms. Shealy asked him what happened at the first victim's house. He testified that a few months later Ms. Shealy came to see him with another public defender, Kelly Kassis. Applicant asserted that law enforcement tried to coerce a confession from him, and Detective Walker sexually assaulted him. He testified that he was handcuffed to a chair and asked about some armed robberies, and he asserted that law enforcement said they had Kristy Bunch in precinct and they were going to take her child.

Applicant testified that law enforcement convinced him that if he gave a statement about the armed robberies and the murder that they would let Ms. Bunch go. He asserted that his statement was not true. Applicant testified that he met with Ms. Shealy along with Beattie Butler and Karen Barker and went over everything. He asserted that Mr. Butler was disturbed about the circumstances surrounding Applicant's statement. Applicant testified that Ms. Shealy had a medical emergency so Mr. Butler handled the Jackson v. Denno hearing. He testified that Mr. Butler did not discuss the possibility of Applicant testifying at the Jackson v. Denno hearing, and if he had known that he could testify then he would have wanted to testify at the Jackson v. Denno hearing. Applicant contended that he was not aware of his right to testify at trial until Judge Pieper asked him during the trial if he wanted to testify. He testified that he then went into a room with Ms. Shealy and Mr. Butler and told them that he wanted to testify, but they told him that they did not want him to testify because the State did not get what it wanted from its witnesses and did not meet its burden. Applicant asserted that he did not testify based on counsel's advice.

Applicant contended that he would have testified that the second victim, Beverly Blake, called him to come get her because the first victim, Dante Tobias, was trying to prostitute her out. He indicated that he would have testified that when he arrived Mr. Tobias pulled a gun on him, a struggled ensued, and in the course of the struggle Ms. Blake shot and killed Mr. Tobias. He asserted that Ms. Blake did not leave Mr. Tobias' residence with a shotgun, as is referenced in Applicant's statement. Applicant asserted that if he had testified at trial he could have contradicted several witnesses who testified against him. He testified that he also could have testified about his alibi defense. Applicant testified that he discussed the alibi defense with counsel, but the defense was not presented at trial. He contended that he was sick in bed with

10

Kristy Bunch all week following Mr. Tobias' murder. Applicant testified that he did not understand trial counsel's strategy with respect to the crime scene video.

Applicant testified that he wrote letters to appellate counsel, Joseph Savitz, asking him to get the sealed in-camera hearing transcripts unsealed. He asserted that he did not receive any correspondence from appellate counsel until counsel filed the brief, in which he only raised the joinder issue. He testified that appellate counsel sent him the opinion of the Court of Appeals, but counsel did not inform him of his right to file a petition for writ of certiorari to the South Carolina Supreme Court.

### Ineffective Assistance of Trial Counsel

The Applicant alleges that he received ineffective assistance of trial counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry, 386 S.E.2d 624.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong,

11

attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 625.    A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997).

This Court finds that Applicant's testimony is not credible while also finding that trial counsel's testimony is credible. This Court finds that the testimony of Matthew Radford and Terrell McCoy is not credible.

This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on several occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, and possible defenses or lack thereof.

Regarding Applicant's claims of ineffective assistance of trial counsel, this Court finds Applicant has failed to meet his burden of proof. This Court finds that counsel demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with Applicant, reviewed the discovery with Applicant, conducted a proper investigation, and was thoroughly competent in her representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

12

This Court finds that trial counsel was not ineffective for failing to object to references to Applicant being housed at Lieber and for allowing prison guards to sit in close proximity to Applicant during trial. Counsel testified that Applicant was not in handcuffs or prison garb, and there were no references to Applicant being convicted of anything. In addition, counsel testified that she did not object to the potential juror's comment "I used to work for SCDC where he's at" because she did not want to draw attention to it. This Court finds that counsel properly noted her reasoning on the record. (Trans. p. 27, line 2 – p. 28, line 11).

This Court finds that trial counsel properly challenged the voluntariness of Applicant's statements. Mr. Butler represented Applicant during his Jackson v. Denno hearing, after which the trial court found that the statements were made freely and voluntarily. Trial counsel also objected to the State reading Applicant's statement into the record during trial. This Court finds that Applicant was not prejudiced by counsel's failure to request a jury instruction regarding the jury's duty to determine the voluntariness of Applicant's statement. Applicant did not confess to either murder in his statement. Rather, he asserted that there was a struggle and Ms. Blake killed Mr. Tobias, and then he never saw Ms. Blake again. Applicant's admissions to those other than law enforcement was more damaging to his defense than his statement to law enforcement. Applicant has failed to show that the outcome of the trial would have been different if counsel had requested such a jury charge.

This Court finds that Applicant was not prejudiced by counsel's failure to object to the admission of the shotgun. In his written statement, Applicant admitted that Ms. Blake had taken a shotgun from Mr. Tobias' home. Because there was no link between the gun and the two murders, the admission of the gun did not prejudice Applicant.

This Court finds that trial counsel articulated a reasonable trial strategy for introducing

13

the "crime scene" video at trial. There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in a case. Caprood v. State, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). Where trial counsel articulates a valid reason for employing a certain trial strategy, such conduct will not be deemed ineffective assistance of counsel. Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995). Counsel's strategy will be reviewed under "an objective standard of reasonableness." Ingle v. State, 348 S.C. 467, 470, 560 S.E.2d 401, 402 (2002). Here, counsel testified that she introduced the crime scene video to show that the victim's body was dry even though it had been raining that week and the surrounding area was wet. She wanted to show that the body had not been there as long as the State claimed it had. This Court finds that counsel's strategy was reasonable.

This Court finds that counsel properly moved to exclude prior bad acts under Lyle and Rule 404(b), SCRE, and properly objected when prior bad acts were referenced. Counsel objected during Kristy Bunch's testimony when Ms. Bunch mentioned Applicant's warrants and probation officer. (Trans. p. 570, lines 10-20). Counsel later made a motion for a mistrial when Ms. Bunch testified that Applicant wanted to call a friend to arrange to get drugs together. (Trans. p. 588, line 13 – p. 603, line 11). The trial court also found that the reference to drug use in the bathroom of the bar would not come in during Dustin James' testimony. (Trans. p. 849, line 25 – p. 850, line 12).

This Court finds that counsel properly cross-examined Rodderick MacBride and had no basis to object to his testimony. Counsel testified that she did not object to Rodderick MacBride's testimony because she did not think his testimony was bolstering his stepdaughter Krystal Lackey's testimony. Counsel asserted that Mr. MacBride, a former police officer, was

14



merely setting out the timing of when Krystal called the police, and she did not think she had any basis to object to that testimony. She did not believe the testimony was overly relevant or harmful to Applicant. This Court denies this allegation.

This Court finds that counsel was not ineffective for failing to object to the admission of the vitreous humor sample without a complete chain of custody. Counsel testified that she must have known that the State could establish the chain of custody. She asserted that Dr. Presnell admitted that it was an inexact formula, but it was not inexact because of the chain.

This Court finds that Applicant was not denied the right to a public trial. The in-camera hearings were on the record in the sealed transcripts.

This Court finds that counsel properly investigated the DNA evidence in the case. There were several stipulations in the record, each of which referenced DNA evidence that did not inculpate Applicant. (Trans p. 501, line 19 – p. 502, line 7; p. 1014, line 21 – p. 1015, line 16; p. 1119, line 16 – p. 1120, line 21).

This Court finds that Mr. Butler properly cross-examined and impeached State's witness Mervin Menair. (Trans. p. 1074, line 21 – p. 1092, line 13). Mr. Butler got Mr. Menair to admit that he had used several different aliases and had several prior convictions.

This Court finds that counsel effectively investigated the alibi defense. Counsel testified that Kristy Bunch was originally an alibi witness for Applicant, but then she flipped and refused to cooperate. Counsel and investigator Dale Davis both testified that Ms. Bunch was the only alibi witness that Applicant provided to them. Counsel testified that Applicant wrote Ms. Bunch a letter in which he asked her to testify that they were together from 9:00 Monday, January 7, 2002 until Thursday night, January 10, 2002. This Court finds that counsel did not request an alibi jury charge because the purported alibi did not pan out.

15



This Court finds that counsel was not ineffective for failing to impeach State's witnesses Nicole O'Connell, Tiffany Mercado, and Krystal Lackey with their prior convictions. First, only Ms. Lackey has a prior conviction. Ms. O'Connell does not have any prior conviction. Ms. Mercado has a rap sheet, but she does not have any convictions. Counsel cross-examined Ms. Lackey about her charge for accessory to burglary. (Trans. p. 1031, lines 15-21). This Court finds that counsel properly cross-examined Ms. Lackey, Ms. O'Connell, and Ms. Mercado.

This Court finds that counsel was not ineffective for failing to show the jury that Eric Zack and Michael Crumb had the ability to communicate in the Charleston County Detention Center. Applicant testified that Mr. Zack admitted to Applicant that he was talking to Mr. Crumb at the jail. However, Applicant testified that he did not know what Mr. Zack and Mr. Crumb were discussing. Counsel properly cross-examined Mr. Zack and Mr. Crumb regarding their respective proffers and plea agreements. (Trans. p. 277, line 20 – p. 289, line 1; p. 374, lines 10-20).

This Court finds that counsel was not ineffective for failing to object to the Solicitor's comment referring to defense witness William Woodson as a "squirrely looking, mentally ill child molester." The Solicitor stated that Mr. Woodson was a "mentally ill child molester" and that he looked "squirrely" on the witness stand. (Trans. p. 1585, line 12 – p. 1586, line 6). Counsel testified that at the time she did not think the comment was objectionable. This Court finds that Applicant has failed to show that the outcome of the trial would have been different if counsel had objected. Mr. Woodson testified at trial that he was incarcerated for criminal sexual conduct with a minor under age 11. (Trans. p. 1277, lines 8-13; p. 1339, lines 6-8). Mr. Woodson testified that he pled guilty and then the judge changed the plea to guilty but mentally ill. (Trans. p. 1340, line 4 – p. 1341, line 15). He also testified that he had received treatment for

16



depression. This Court finds that the Solicitor's comment was not overly inflammatory or prejudicial.

This Court finds that counsel properly renewed its joinder motion at the conclusion of the State's case. Counsel testified that she might not have known until the State rested that Peter Davies was not going to testify. This Court finds that the issue was properly preserved for appeal.

This Court finds that counsel properly advised Applicant of his right to testify at trial. Counsel testified that she did not tell Applicant that he did not need to testify because the State had not met its burden of proof. She asserted that she did not recall why Applicant did not testify. This Court finds that Applicant's testimony that he did not know about his right to testify until Judge Pieper asked him about it is not credible. Nonetheless, after Judge Pieper's inquiry, Applicant was given time to discuss his right to testify with counsel. This Court finds that it was Applicant's decision not to testify.

This Court finds that counsel was not ineffective for failing to object to the Solicitor's comment that the two co-defendants had pled guilty and taken responsibility for their actions and that the hand of one is the hand of all. Counsel testified that she did not think the comment was a violation of Applicant's right to a jury trial. Rather, counsel testified that she believed the Solicitor was pointing out that Mr. Zack and Mr. Crumb have taken responsibility for their actions. Likewise, this Court finds that counsel was not ineffective for failing to object to the State's purported improper bolstering, vouching for, and placing the prestige of the government behind the State's case. Counsel testified that she did not believe it was improper bolstering. Moreover, counsel fully attacked law enforcement in her closing argument. Counsel testified that the State's comment on Applicant not calling witnesses got close to the line of burden

17



shifting but did not cross the line. This Court finds that counsel was not ineffective for failing to object to this comment.

This Court finds that counsel was not ineffective for failing to object to the court's malice instruction and seek an instruction that in cases of self-defense, a weapon can be possessed without malice. In this case, the Applicant's defense was not self-defense. Applicant's position was that Ms. Blake shot Mr. Tobias and he did not know who killed Ms. Blake. This Court finds that the trial court gave a standard jury charge on malice.

In addition, the Court of Appeals found that "[o]verwhelming evidence was presented that Mann committed the two murders." "No prejudice occurs, despite trial counsel's deficient performance, where there is otherwise overwhelming evidence of guilt." Smith v. State, 386 S.C. 562, 565, 689 S.E.2d 629, 631 (2010) (citing Rosemond v. Catoe, 383 S.C. 320, 325, 680 S.E.2d 5, 8 (2009)). Accordingly, this Court finds the Applicant has failed to satisfy both prongs of Strickland. Applicant's complaints concerning trial counsel's performance are hereby denied and dismissed.

### Ineffective Assistance of Appellate Counsel

Applicant alleges that he received ineffective assistance of appellate counsel in that appellate counsel failed to brief certain issues and failed to file a petition for writ of certiorari to the South Carolina Supreme Court. A defendant is constitutionally entitled to effective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "However, appellate counsel is not required to raise every non-frivolous issue that is presented by the record." Thrift v. State, 302 S.C. 535, 539, 397 S.E.2d 523 (1990). Appellate counsel has a professional duty to choose among potential issues according to their merit. Jones v. Barnes, 463 U.S. 745 (1983). Where the strategic decision to exclude certain issues on appeal

18

is based on reasonable professional judgment, the failure to appeal all trial errors is not ineffective assistance of counsel. Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985).

The Applicant must show that appellate counsel's performance was deficient and that he was prejudiced by the deficiency. Thrift, 302 S.C. at 537; Gilchrist v. State, 364 S.C. 173, 612 S.E.2d 702 (2005); Anderson v. State, 354 S.C. 431, 581 S.E.2d 834 (2003). When a claim of ineffective assistance of counsel is based upon failure to raise viable issues, the court must examine the record to determine "whether appellate counsel failed to present significant and obvious issues on appeal." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986). Generally, the presumption of effective assistance of counsel will be overcome only when the alleged ignored issues are clearly stronger than those actually raised on appeal. Id.

This Court finds that appellate counsel is an experienced appellate attorney. This Court finds that appellate counsel properly chose to brief the issue that he believed was the most meritorious. This Court finds that Applicant has failed to show that appellate counsel's representation was deficient.

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial or sentencing

proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of written notice of entry of this Order to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely served and filed.

**IT IS THEREFORE ORDERED:**

1.     That the application for post-conviction relief be denied and dismissed with prejudice; and

2.     That the Applicant be remanded to the custody of the Respondent.

**AND IT IS SO ORDERED** this 24th day of January 2012

Kristi II. Harrington
Presiding Judge
9th Judicial Circuit

Charleston, South Carolina.

# The Supreme Court of South Carolina

Anthony Mann, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2012-212824
Lower Court Case No. 2008-CP-10-00057

## ORDER

This matter is before the Court on a petition for a writ of certiorari. The petition is denied.

_____ C.J.
FOR THE COURT

Columbia, South Carolina

December 4, 2014

cc:
Joshua Snow Kendrick, Esquire
Ashleigh Rayanna Wilson, Esquire



# The Supreme Court of South Carolina

DANIEL E. SHEAROUSE
CLERK OF COURT

BRENDA F. SHEALY
CHIEF DEPUTY CLERK

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA
29211
1231 GERVAIS STREET
COLUMBIA, SOUTH CAROLINA 29201
TELEPHONE: (803) 734-1080
FAX: (803) 734-1499
www.sccourts.org

December 22, 2014

The Honorable Julie J. Armstrong
100 Broad St Ste 106
Charleston SC 29401-2210

## **REMITTITUR**

Re:   Anthony Mann v. State
      Lower Court Case No. 2008CP1000057
      Appellate Case No. 2012-212824

Dear Clerk of Court:

The above referenced matter is hereby remitted to the lower court or tribunal. A copy of the judgment of this Court is enclosed.

Very truly yours,

CLERK

cc:   Joshua Snow Kendrick, Esquire
      Ashleigh Rayanna Wilson, Esquire