IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Anthony L. Mann,           )      C/A No. 0:15-163-RMG-PJG
                                 )
               Petitioner,  )
                                 )
vs.                            )      **REPORT AND RECOMMENDATION**
                                 )
Warden Cecelia Reynolds,    )
                                 )
               Respondent.  )
_____)

Petitioner Anthony L. Mann is a state prisoner and filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mann is now represented by counsel. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 26.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 28.) Counsel for Mann filed a notice of appearance and a response in opposition to the respondent's motion for summary judgment (ECF No. 50). Having carefully considered the parties' submissions and the record in this case, the court finds that the respondent's motion for summary judgment should be granted and Mann's Petition denied.

## BACKGROUND

Mann was indicted in July 2002 in Charleston County for armed robbery and two counts of murder (2002-GS-10-4413, -4414, -4415). (ECF No. 27-1 at 107.) Mann was represented by Jennifer K. Shealy, Esquire, and Beattie Butler, Esquire, and beginning September 15, 2003 was tried by a jury and found guilty as charged. (ECF No. 27-4 at 70.) The circuit court sentenced Mann

to thirty years' imprisonment for armed robbery, and life imprisonment for each count of murder. (ECF No. 27-4 at 101.)

Mann timely appealed and was represented by Joseph L. Savitz, III, Esquire, of the South Carolina Commission on Indigent Defense, who filed a brief on Mann's behalf that raised the following issue:

> The judge erred in allowing the State to join the two murder charges in a single trial since, contrary to its assertions before the trial started, the State could establish no logical connection between the two cases such as would permit them to be tried together.

(ECF No. 27-4 at at 104-12.) On January 11, 2007, the South Carolina Court of Appeals affirmed Mann's conviction. (State v. Mann, Op. No. 2007-UP-016 (S.C. Ct. App. Jan. 11, 2007), ECF No. 27-4 at 130-35.) The remittitur was issued on February 2, 2007. (ECF No. 27-4 at 136.)

Mann filed a *pro se* application for post-conviction relief ("PCR") on January 7, 2008 in which he raised the following claims:

1. Ineffective assistance of trial counsel in that counsel committed a multitude of errors, including failure to call relevant witnesses.

2. Actual innocence.

(Mann v. State of South Carolina, 08-CP-10-57, ECF No. 27-4 at 138-43.) Mann, through counsel Wesley Locklair, Esquire, filed an amendment to his PCR application in which he raised the following issues:

1. That trial counsel was ineffective for failing to object to testimony regarding Applicant being a convicted felon and being housed at Lieber Correctional Institution and for allowing prison guards to sit in such close proximity to Applicant that Applicant was effectively in prison garb.

2. That trial counsel was ineffective for failing to properly challenge the voluntariness and admission of Applicant's statements to law enforcement,



including, but not limited to, his post-arrest statement and alleged "Excited Utterance" to Detective Robert Walker.

3.   That trial counsel was ineffective for failing to request a finding by the Court that Applicant's statement was taken in compliance with <u>Miranda</u> and for failing to request a jury instruction outlining the jury's duty to determine the voluntariness of Applicant's statement.

4.   That trial counsel was ineffective for failing to object to the admission of the shotgun in this case when there was no link to the gun and the alleged crime.

5.   That trial counsel was ineffective for playing the "crime scene" video for the jury and introducing it into evidence.

6.   That trial counsel was ineffective for failing to object to evidence of drug use and other drug activity, other prior bad acts and other impermissible character evidence.

7.   That trial counsel was ineffective for failing to object to hearsay testimony offered by State's witnesses Dustin James and Maria Jacques.

8.   That trial counsel was ineffective for failing to object to improper character evidence, bolstering and collaboration offered through State's witness Rodderick MacBride, and for failing to properly cross-examine MacBride for impeachment of Krystal Lackey.

9.   That trial counsel was ineffective for failing to object to the admission of the vitreous humor sample without a complete chain of custody, nor did counsel interview or call the actual examiner as a witness.

10.   That trial counsel was ineffective for failing to protect Applicant's right to a public trial by not objecting to four in camera hearings and requiring the Court to make specific findings on the record.

11.   That trial counsel was ineffective for failing to investigate the DNA evidence in this case as potentially exculpatory to Applicant.

12.   That trial counsel was ineffective for failing to properly cross-examine and impeach State's witness Mervin Menair.

13.   That trial counsel was ineffective for failing to present an alibi defense and request an alibi jury charge from the Court.



14.    That trial counsel was ineffective for failing to impeach State's witnesses Nicole O'Connell, Tiffany Mercado and Krystal Lackey with their prior convictions and other potential evidence.

15.    That trial counsel was ineffective for failing to properly show the jury the ability of State's witnesses Eric Zack and Michael Crumb to communicate in the Charleston County Detention Center and for failing to object to impermissible comments by the prosecutor for referring to Defense witness William Woodson as a "squirrely looking, mentally ill child molester."

16.    That trial counsel was ineffective for failing to re-challenge the trial court's pretrial rulings on joinder at the start of the trial and after the State failed to produce an eyewitness as alleged to the Court.

17.    That trial counsel was ineffective for convincing Applicant not to testify when he originally wanted to testify; however, Applicant asserts but for the advice of counsel, he would have testified.

18.    That trial counsel was ineffective for failing to object to the Solicitor's arguments that two co-defendant[]s had pled guilty and taken responsibility for their actions and that the hand of one is the hand of all, thus impermissibly commenting on Applicant exercising his constitutional rights to a jury trial and to remain silent.

19.    That trial counsel was ineffective for failing to object to the State improperly bolstering, vouching for and attempting to place the prestige of the government behind the State's case.

20.    That trial counsel was ineffective for failing to object to the State commenting on Applicant exercising his constitutional rights to a jury trial and to remain silent, including but not limited to comments about why the Defense did not call certain witnesses.

21.    That trial counsel was ineffective for failing to object to the State invoking the passion of the jury by making impermissible comments in closing regarding the victims' families, and when objections were made and sustained for failing to request that the questions and answers be stricken and a curative instruction given.[]

22.    That trial counsel was ineffective for failing to object to the malice instruction and seek an instruction that in cases of self-defense, a weapon can be possessed without malice.

23.     That trial counsel was ineffective for failing to object to improper arguments during Solicitor's closing.

24.     That trial counsel was ineffective based on the totality of the circumstances.

25.     That trial counsel was ineffective for failing to properly cross examine State's witnesses Eric Zack and Michael Crumb regarding their potential plea deals and sentencing[,] in that the State intentionally withheld sentencing until after trial.

26.     That trial counsel was ineffective for failing to object to there not being a properly impaneled, recorded and conducted grand jury that convened in this case.

27.     That Appellate Counsel was ineffective for failing to argue that the trial court erred in admitting the vitr[e]ous humor analysis.

28.     That Appellate Counsel was ineffective for failing to argue that the trial court erred in admitting color autopsy photos of the victims.

29.     That Appellate Counsel was ineffective for failing to argue that the trial court erred in denying Applicant's motion for a mistrial based on in[]admissible character evidence and prior bad acts.

30.     That Appellate Counsel was ineffective for failing to argue that the trial court erred in failing to request the sealed portions of the transcript and utilize them in an appeal.

31.     That Appellate Counsel was ineffective for failing to file a petition for writ of certiorari to the South Carolina Supreme Court.

(ECF No. 27-6.) On November 14 and 18, 2011, the PCR court held an evidentiary hearing at which Mann appeared and testified and was represented by Wesley Locklair, Esquire and Joshua Kendrick, Esquire. By order filed January 26, 2012, the PCR court denied and dismissed Mann's PCR application with prejudice. (ECF No. 27-4 at 412-31.) Counsel for Mann filed a motion to alter or amend (ECF No. 27-4 at 433-37), which was denied on August 8, 2012 (ECF No. 27-4 at 442).



Mann, who continued to be represented by Locklair and Kendrick, filed a petition for a writ of certiorari that presented the following questions:

1    The PCR court erred by not finding Petitioner's right to a public trial was denied through closed hearings including an *ex parte* meeting between the solicitor and the judge[.]

2.    The PCR court erred by not finding trial counsel ineffective for failing to object to or move to suppress evidence related to a shotgun.

3.    The PCR court erred by not finding trial counsel ineffective for failing to object to the presence of prison guards at trial and the jury's knowledge of Petitioner's detention in Lieber Correctional Institution at the trial.

4.    The PCR court erred by not finding trial counsel ineffective for failing to object to or moving to limit improper character evidence.

5.    The PCR court erred by not finding trial counsel ineffective for failing to properly challenge the admission of Petitioner's statement.

6.    The PCR court erred by not finding trial counsel ineffective for failing to call an expert witness.

7.    The PCR court erred by not finding trial counsel ineffective for failing to request a jury charge on the voluntariness of the statement and for failing to object to no finding that the statement was taken in accordance with Miranda.

8.    The PCR court erred by not finding trial counsel ineffective for failing to object to the introduction of a graphic crime scene video.

9.    The PCR court erred by not finding trial counsel ineffective for failing to object to witness' hearsay statements and corroboration.

10.    The PCR court erred by not finding trial counsel ineffective for failing to present an alibi defense or request an alibi instruction from the court.

11.    The PCR court erred by not finding trial counsel ineffective for failing to object to the prosecution's improper comments on Petitioner's exercise of his right to a jury trial and failure to call certain witnesses.

PJG

12.     The PCR court erred by not finding appellate counsel ineffective for failing to order certain transcripts, maintain contact with Petitioner and properly advising him of his rights and correct procedures.

(ECF No. 27-8.)  On December 4, 2014, the South Carolina Supreme Court issued an order denying

Mann's petition for a writ of certiorari.  (ECF No. 27-11.)  The remittitur was filed on January 28,

2015.

Mann filed the instant Petition for a writ of habeas corpus on January 6, 2015.[1]  (ECF No. 1.)

## FEDERAL HABEAS ISSUES

Mann's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  Mann was denied his 6th Amendment right to the effective assistance of counsel and his right to a Public Trial by and through trial counsel's failure to assert and protect this right when various secret hearings were held in Mann's trial.

**Ground Two:**  Mann was denied the effective assistance of trial counsel in violation of the 6th Amendment when trial counsel failed to object to and seek suppression of a 12-gauge shotgun that was in no way connected to Mann.

**Ground Three:**  Mann was denied the effective assistance of counsel in violation of the 6th Amendment, and denied his rights to a fair trial in violation of the 14th Amendment when his counsel failed to object to the repeated references to Mann's being in a maximum-security prison at the time of trial.  From the very outset of trial the jury was told that Mann was serving time at the Lieber Correctional Institution, a local maximum-security prison.

**Ground Four:**  Mann was denied effective assistance of counsel in violation of the 6th Amendment by and through trial counsel's introducing into evidence and playing before the jury a crime scene horror video of victim [B.B.] being found deceased in a wooded area and having her body manipulated by the coroner and crime scene personnel.

**Ground Five:**  Mann was denied the effective assistance of counsel in violation of the 6th Amendment by and through trial counsel's failure to present the testimony of

---

[1] See Houston v. Lack, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court).



readily available experts in the line of pathology in reference to the time of death of [B.B.].

**Ground Six:** Mann was denied the effective assistance of counsel in violation of the 6th Amendment, and his 14th Amendment right to Due Process as a result of trial counsel's failure to require the state to meet it[]s burden of showing a complete chain of custody on the "vitreous humor" sample and testing, and denied Mann his constitutional rights to be confronted with and cross-examine the evidence and witnesses against him.

**Ground Seven:** Mann was denied the effective assistance of counsel in violation of the 6th Amendment as a result of trial counsel's failure to challenge and seek suppression of Mann's post-arrest statement illegally coerced from him upon arrest.

**Ground Eight:** Mann was denied the effective assistance of counsel in violation of the 6th Amendment as a result of trial counsel's failure to object to the erroneous allegation of an "excited utterance" manufactured to the court by Detective Robert Walker.

**Ground Nine:** Mann was denied his 6th Amendment right to effective assistance of counsel as a result of trial counsel's failure to object to drug related and other inadmissible prior bad acts testimony admitted through state's witness, Kristy Bunch.

**Ground Ten:** Mann was denied the effective assistance of counsel in violation of the 6th Amendment when trial counsel failed to object to the state's improperly arguing the guilty pleas of Mann's co-defendants, Michael Crumb and Eric Zack, as evidence to infer guilt upon Mann, and commenting upon Mann's exercising his constitutional rights to a jury trial, and to put the state to it[]s burden of proving him guilty beyond a reasonable doubt.

**Ground Eleven:** Mann was denied his right to effective assistance of counsel in violation of the 6th Amendment by and through his trial counsel's failure to object to the prejudicial hearsay statements and improper corroboration testimony of state's witnesses Dustin James and Maria Jacques.

**Ground Twelve:** Mann was denied his right to the effective assistance of counsel in violation of the 6th Amendment as a result of trial counsel's failure to object to the Solicitor's improperly commenting upon, vouching for, and placing the imprimatur and prestige of the government behind the state's law enforcement witnesses, as well as the state's case.

**Ground Thirteen:** Mann was denied his right to the effective assistance of counsel in violation of the 6th Amendment when trial counsel failed to call relevant witnesses



on his behalf by and through trial counsel[']s failure to locate and call Jessica Still-Meddaugh to testify on Mann's behalf, and to object to improper comments from the State.

**Ground Fourteen:** Mann was denied the effective assistance of counsel in violation of the 6th Amendment and denied due process in violation of the 14th Amendment as a result of trial counsel's failure to properly and adequately object to the Solicitor's spreading the wings of her personal status as a "spoke[]swoman" for the people and diluting the principle that guilt may not be established by "arousing the passions" of the jury.

**Ground Fifteen:** Mann was denied the effective assistance of counsel, in violation of the 6th Amendment, as a result of trial counsel[']s failure to present an *alibi* defense and request an *alibi* instruction to the jury as part of a valid trial strategy for the murder of [B.B.].

**Ground Sixteen:** Mann was denied his 6th Amendment right to the effective assistance of counsel as a result of trial counsel's advising him to waive his right to testify on his own behalf, and forfeit taking the stand on his own behalf.

**Ground Seventeen:** Mann was denied the effective assistance of counsel in violation of the 6th Amendment, as a result of trial counsel's failure to object to the irrelevant testimony of Krystal Lackey's stepfather Rodderick T. MacBride, and failing to utilize this witness to expose the perjury of Krystal Lackey, his step-daughter of 17 years.

**Ground Eighteen:** Mann was denied the effective assistance of counsel in violation of the 6th Amendment as a result of the overwhelming cumulative prejudicial effect of each of the enumerated errors committed by trial counsel which also effectively denied Mann his most fundamental rights of due process, and a fair and public trial.

**Ground Nineteen:** The State was in misconduct and violated Mann's rights to due process under the 14th Amendment when the Solicitor knowingly introduced the perjured testimony of Krystal Lackey (See Grounds Thirteen and Seventeen) and failed to correct false testimony when it appeared.

**Ground Twenty:** Mann was denied his 6th Amendment right to the effective assistance of appellate counsel as a result of appeal counsel's failure to motion the court to unseal sealed portions of Mann's trial transcript, and properly advise Mann of his rights and correct procedures.

(Pet., ECF No. 1) (emphasis in original).



**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g.,

Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).



"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

C.    **Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.    Respondent's Motion for Summary Judgment**

**1.    Voluntarily Abandoned Grounds**

As an initial matter, Mann's response in opposition to the respondent's motion for summary judgment does not address habeas Grounds Four, Six, Eight, Eleven, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Nineteen.    (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50.) Consequently, the court finds that Mann has voluntarily abandoned these grounds.    Moreover, the court agrees with the respondent that Grounds Six, Eight, Thirteen, Fourteen, Sixteen, Seventeen, and Nineteen are procedurally defaulted because Mann did not raise these claims on PCR appeal. See Coleman, 501 U.S. at 735 n.1 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).    Because Grounds Six, Eight, Thirteen, Fourteen, Sixteen, Seventeen, and Nineteen were not fairly presented to the Supreme Court of South Carolina, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice.    Mann sets forth no such showing.    Alternatively, to overcome the procedural bar, Mann must demonstrate a fundamental miscarriage of justice by showing he is actually innocent.    See Murray v. Carrier, 477 U.S. 478, 495-96 (1986).    Again, Mann has made no such showing.    To the extent that Mann asserts that he can overcome the procedural bar of Ground Twelve pursuant to Martinez v. Ryan, the claim will be addressed below.    Additionally, for the reasons set forth in the respondent's motion for summary judgment, Mann's habeas Grounds Four, Eleven and Fifteen are without merit.    Mann's remaining claims will be addressed below.

2.      **Ineffective Assistance of Counsel Generally**

A defendant has a constitutional right to the effective assistance of counsel.  To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").  To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105.  The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).  The Court instructed that the standards created under Strickland and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions



were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard."  <u>Id.</u>

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court.  As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief.  In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the court could have relied upon in summarily denying Mann's petition.  Therefore, the court turns to the question whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts.  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the <u>Strickland</u> test in determining that no Sixth Amendment violation occurred.

### 3.    Ground One

In Ground One, Mann argues that he was denied his Sixth Amendment right to effective assistance of counsel and right to a public trial through trial counsel's failure to assert and protect this right when various secret hearings were held at trial.  (Pet., ECF No. 1 at 15.)  Mann cites <u>Waller v. Georgia</u>, 467 U.S. 39 (1984), for the proposition that his Sixth Amendment right to a public trial was violated when the trial court conducted four *in camera* hearings during trial.  (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 15.)

 The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI;



see also In re Oliver, 333 U.S. 257, 278 (1948) (holding this right to be binding on the states through the Due Process Clause of the Fourteenth Amendment).  "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions."  Waller, 467 U.S. at 46 (1984) (quoting Gannett Co. v. DePasquale, 443 U.S. 368 (1979)).  Because of the " 'great, though intangible, societal loss that flows' from closing courthouse doors," the denial of a right to a public trial is considered a structural error for which prejudice is presumed.  Id. at n.9 (quoting People v. Jones, 47 N.Y.2d 409, 416 (N.Y. 1979)).

In light of these concerns, to justify the closure of a courtroom over the objections of a defendant, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure" (hereinafter "Waller findings").  Id. at 48 (applying the test set forth in Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984), to a Sixth Amendment public trial claim).  While the Supreme Court has recognized that there is a presumption in favor of open trials, the right is not absolute, and the Supreme Court also recognizes that trial judges have discretion to impose reasonable limitations on access to a trial when overriding interests, "such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information," are likely to go unprotected if closure is not employed.  Waller, 467 U.S. at 45; see also Bell v. Evatt, 72 F.3d 421, 433 (4th Cir. 1995) ("Although there is a strong presumption in favor of openness, the

PJG

right to an open trial is not absolute. The trial judge may impose reasonable limitations on access to a trial in the interest of the fair administration of justice.").

In the instant case, there were four hearings that occurred during Mann's trial outside the presence of the public. The first hearing related to a file the Public Defender's Office subpoenaed from the Berkeley County Sheriff's Department because one of the state's witnesses, Peter Davies, was the subject of an ongoing homicide investigation. The Sheriff's Department moved to quash the subpoena:

> The subpoena is for the complete file of a pending ongoing investigation of a homicide in Berk[e]ley County. They subpoenaed the file containing sensitive information, some statements from some witnesses, some FBI reports. We would submit to the Court that that information is protected and privileged in an ongoing investigation and ask the Court to do one of two things: The first would be to quash the subpoena based upon the sensitive nature contained in the file. Secondly, your Honor, for your Honor to take the file and review it in camera and then make a determination as to what, if anything, could be released pursuant to the subpoena.

(App. at 138, ECF No. 27-1 at 140.) The Sheriff's Department added that the sensitive information in the pending case posed a risk to the safety of other individuals. (App. at 139, ECF No. 27-1 at 141.) Over the solicitor's objection, trial counsel adamantly argued for an *ex parte* hearing for the opportunity to discuss the reasons for the subpoena without exposing Mann's defense. The court agreed to go in chambers only to hear how it could implicate the defense's strategy. (App. at 135-142, ECF No. 27-1 at 137-44.) Transcripts of the *in camera* hearing were sealed (and are no longer available).[2] A second *in camera* hearing was conducted, excluding the solicitor who was not a party

---

[2] According to Mann, transcripts of the *in camera* hearings are no longer available because they were not requested by appellate counsel prior to the time court reporters are permitted to destroy their tapes pursuant to South Carolina Appellate Court Rule 607. See SCACR 607(i) (allowing court reporters to reuse or destroy tapes of a proceeding after five years); (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 15, 46.)



to the subpoena, to give the Berkeley County Sheriff's Department an opportunity to respond and

lay a foundation for why the confidential information contained in the Davies file should not be

disclosed. (App. at 250-57, ECF No. 27-1 at 252-59.) Transcripts of the *in camera* hearing were

sealed (and are no longer available). Upon returning to the courtroom, the court explained:

> Just for the record, that hearing was solely for the purpose of hearing the County's
> request to quash the subpoena . . . .
>     In order to preserve the State's request that they have some concern about
> disclosure of information in another case insofar as law enforcement investigations,
> no information has been turned over. The Court decided that it would look at the
> information itself and decide whether or not it could be used for any purpose other
> than the one articulated in court as a legal basis yesterday, that being bias. So if it
> does turn into something that I think has to be disclosed, then I will get back with
> each side and let you know that.

(App. at 258, ECF No. 27-1 at 260.)

The third and fourth *in camera* hearings related to Mann's concerns that the solicitor's office

or their representatives were improperly pressuring witnesses not to testify for the defense. (App.

at 1428, ECF No. 27-3 at 429.) Again, trial counsel moved to conduct the hearings *ex parte* and *in

camera*, explaining that Mann "would have to reveal part of the preparation for his case and what

he believes the witnesses would say on his behalf. He does not want to reveal that to the Solicitor's

office." (App. at 1428, ECF No. 27-3 at 429.) The court agreed to conduct the witness intimidation

allegation hearing *in camera* but with both sides present: "You can get those people in here if that's

who you're going to call to testify, and do that, and then at the appropriate point take that matter up

as a collateral matter, or -- I just don't see how it affects your -- if you're having trouble getting a

witness here, that needs to be brought to the Court's attention, and let's see what remedies might be

available." (App. at 1428-29, ECF No. 27-3 at 429-30.) The transcript of the third *in camera*

hearing, spanning trial transcript pages 1402-1453 was sealed (and is no longer available). Upon



returning to the courtroom, the trial court stated: "[R]egarding the last matter that was presented to the Court, that currently that matter's not being pursued, it's not pending at this time . . . ." (App. at 1430, ECF No. 27-3 at 431.) The fourth *in camera* hearing was conducted on September 24, 2003, spanning sealed pages 1480-1523 of the trial transcript, which is no longer available.

Appellate counsel did not raise a right to public trial claim on direct appeal. Consequently, the *in camera* sealed transcripts were apparently destroyed because they were not requested by Mann prior to the time court reporters are allowed to destroy their tapes. Mann did, however, raise the issue in his PCR application, arguing that counsel was ineffective in relation to the closures. (App. at 1638, ECF No. 27-4 at 140.) Trial counsel testified at the PCR hearing. When asked why she did not request that specific findings were made as to why the hearings were conducted *in camera*, counsel stated that she did not "understand how those obviated [Mann's] having a public trial." (App. at 1729, ECF No. 27-4 at 231.) Further, trial counsel testified that witnesses and law enforcement officers were called regarding Mann's allegations that law enforcement had been placing pressure on the witnesses he hoped would testify for him. (App. at 1730, ECF No. 27-4 at 232.) In the context of analyzing Mann's ineffective assistance of counsel claims, the PCR court determined that Mann was "not denied the right to a public trial. The in-camera hearings were on the record in the sealed transcripts." (App. at 1924, ECF No 27-4 at 426.)

To the extent that Mann now claims counsel was ineffective for failing to object to the closures, his claim is without merit. As discussed above, trial counsel initiated the request for the *in camera*, *ex parte* hearings in an attempt to zealously represent her client. The PCR court reasonably found that trial counsel was competent in her representation and trial counsel's performance here did not fall below an objective standard of reasonableness. See <u>Strickland</u>, 466



U.S. at 625.  To the extent Mann contends that the PCR court's decision was contrary to, and unreasonably applied, Waller v. Georgia (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 17), the claim is also without merit.  Waller does not clearly establish that a trial court must make the "Waller findings" when the defendant does not object to the closure, or as in the instant case, the defendant seeks the closure.  The very first sentence of Waller highlights that the Supreme Court was considering *only* a closure of the courtroom over a defendant's objection: "Th[is] case[ ] require[s] us to decide the extent to which a hearing on a motion to suppress evidence may be closed to the public *over the objection of the defendant* consistently with the Sixth and Fourteenth Amendment right to a public trial." Waller, 467 U.S. at 40-41 (emphasis added).  The Supreme Court's statement of its holding was likewise limited to a closure over the objection of a defendant:  "In sum, we hold that under the Sixth Amendment any closure of a suppression hearing *over the objections of the accused* must meet the tests set out in Press-Enterprise and its predecessors."  Id. at 47 (emphasis added).  Given that the Supreme Court specifically mentioned an objection by the defendant both when framing the issue for decision and when summarizing its holding, it stretches Waller too far to read it *as clearly establishing* that a trial court must make the "Waller findings" even where defendant does not object, and in fact, initiates the request for closure.  See Johnson v. Sherry, 586 F.3d 439 (6th Cir. 2009) ("[D]efense counsel's objection triggers the trial court's duty to make factual findings under Waller"); see also Downes v. Lape, 657 F.3d 97 (2d Cir. 2011).

In the instant case, the trial judge closed the first pair of hearings upon a request by trial counsel to consider her challenge to the Berkeley County Sheriff Department's motion to quash, without having to expose defense strategies.  The court further sought to address the Sheriff Department's concerns that the file contained sensitive material.  The trial court's ruling resulting



from the first two *in camera* hearings was to conduct an *in camera* review of the file to determine whether that file would further Mann's defense in the manner of impeachment. The second pair of hearings, again initiated by trial counsel, related to Mann's concerns that the state improperly pressured defense witnesses not to testify on his behalf. The court made clear that if any of the witnesses who were presented *in camera* were to be called as defense witnesses at trial, their testimony would also occur in the courtroom as part of the ordinary course of trial. While it may have been prudent for the trial court to make its <u>Waller</u> findings regarding the closure on the record, <u>Waller</u> does clearly establish that it was mandatory in these circumstances; not only did trial counsel not object to the closure, but she initiated the request for the *ex parte*, *in camera* proceedings in order to protect her client. Consequently, on the facts of this case, the court cannot find that the PCR court's decision was contrary to, or resulted in an unreasonable application of <u>Waller v. Georgia</u>, and summary judgment should be granted.

### 4.    Ground Twenty[3]

Relevant to the above claim, Mann asserts that he was denied his Sixth Amendment right to effective assistance of appellate counsel as a result of appellate counsel's failure to motion the court to unseal the four *in camera* hearings described in Ground One, and appellate counsel did not properly advise him of the appellate procedures. (Pet., ECF No. 1 at 36.)

At the PCR hearing, Mann testified that appellate counsel did not order the sealed portions of the transcript. (App. at 1867, ECF No. 27-4 at 369.) Appellate counsel was not called to testify at the PCR hearing. The PCR court determined that "appellate counsel properly chose to brief the

---

[3] Ground Twenty has been taken out of order for the simple fact that its factual basis is directly linked to the preceding claim, Ground One.



issue that he believed was the most meritorious. . . . Applicant has failed to show that appellate counsel's representation was deficient."  (App. at 1928, ECF No. 27-4 at 430.)

In applying Strickland to claims of ineffective assistance of appellate counsel, this court accords appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).  " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989) (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims").  Although it is possible to bring a successful ineffective assistance of appellate counsel claim based on failure to raise a particular issue on direct appeal, the Supreme Court has reiterated that it is "difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. 259, 288 (2000).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. at 288 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).  To establish prejudice relating to the actions of appellate counsel, a petitioner must establish a reasonable probability that, but for his counsel's unreasonable failure to include a particular issue on appeal, he would have prevailed on his appeal.  See id. at 285-86.

Here, even assuming appellate counsel was deficient in failing to move to unseal the *in camera* hearings, Mann cannot succeed because he has not shown ensuing prejudice resulting from



the missing transcripts.  Peter Davies did not testify at trial.  Mann has not set forth any evidence to demonstrate a reasonable probability that had counsel pursued a witness tampering claim on appeal, he would have prevailed.  Without a showing of prejudice, Mann's claim cannot succeed.  Consequently, the respondent's motion for summary judgment should be granted as to Ground Twenty.

### 5.    Ground Two

In Ground Two, Mann asserts he was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to object to the introduction of a 12-gauge shotgun and seek suppression of this shotgun that was in no way connected to him.  (Pet., ECF No. 1 at 15-16.)  Mann argues that the admission of the gun, which had no connection to the two charged killings, was highly prejudicial and the state court's decision is contrary to, and involves an unreasonable application of, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and is also an unreasonable application of the facts presented in the state court proceeding.  (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 17-21.)

The shotgun was introduced at trial through the testimony of Sergeant Robert Walker of the Charleston County Sheriff's Office.  (App. at 1155, ECF No. 27-3 at 157.)  Walker testified that the bullets that killed Dante Tobias and B.B. were consistent with a .38 special, .357 Magnum.  Walker further testified that the recovered shotgun was sent off for testing but was not consistent with any of the bullets fired in the commission of the murders in this case.  (<u>Id.</u>)  Mann's statement to law enforcement, which was introduced during Walker's testimony, was that B.B. shot Tobias and B.B. then retrieved the shotgun from Tobias's home before leaving with Mann.  (App. at 1159-60, ECF



No. 27-3 at 161-62.) Trial counsel did not object to the introduction of the shotgun. (App. at 1166, ECF No. 27-3 at 168.)

Trial counsel testified during the PCR hearing that she could not recall specifically why she did not object to the introduction of the shotgun, although she believed that the fact that Tobias possessed a shotgun may have actually helped her client rather than hurt him. (App. at 1714-15, ECF No. 27-4 at 216-17.) The PCR court found Mann "was not prejudiced by counsel's failure to object to the admission of the shotgun. In his written statement, [Mann] admitted that [B.B.] had taken a shotgun from Mr. Tobias' home. Because there was no link between the gun and the two murders, the admission of the gun did not prejudice [Mann]." (App. at 1922, ECF No. 27-4 at 424.)

On federal habeas review, "[t]he question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington</u>, 562 U.S. at 104. After a careful review of the record, the court finds that in light of Sergeant Walker's testimony that the shotgun was not used in the murders of Tobias or B.B. (App. at 1155, ECF No. 27-3 at 157), the PCR court's determination that Mann was not prejudiced by counsel's failure to object to the admission of the shotgun was reasonable. Thus, Mann has not shown that the PCR court's rejection of his claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law. Nor has Man shown the PCR court's decision was based on an unreasonable determination of the facts. Consequently, summary judgment should be granted on Ground Two.

### 6.     Ground Three

In Ground Three, Mann contends that he was denied his Sixth Amendment right to effective assistance of counsel and right to a fair trial in violation of the Fourteenth Amendment when trial counsel failed to object to the repeated references to his being housed at Lieber Correctional



Institution ("Leiber") at the time of trial, and to the placement of two, uniformed South Carolina Department of Corrections ("SCDC") guards seated behind him during trial. (Pet., ECF No. 1 at 16-17.) Mann argues that trial counsel's performance fell well below professional norms when she allowed repeated references to be made at trial that Mann was placed in a maximum security prison facility while in pretrial detention, and the state court decision on this issue is contrary to, or an unreasonable application of, Strickland, and was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 21-27.)

The record reflects that Mann's placement at Lieber was first referenced at *voir dire* when a potential juror stated "I used to work for SCDC where he's at." (App. at 111, ECF No. 27-1 at 113.) The court immediately convened a bench conference where the juror explained that he previously worked for Lieber. Trial counsel noted the juror's comment but declined a curative instruction because she did not "want to bring it to the attention of the jurors." (App. at 112, ECF No. 27-1 at 114.) Lieber was again mentioned when trial counsel cross-examined Kristy Bunch as to why Mann's alleged confession to her was not recorded when all Lieber phone conversations were recorded. (App. at 708-09, ECF No. 27-2 at 211-12.) Lieber was next mentioned by investigator John Burnett, who after listening to over three hundred calls between Mann and Bunch, confirmed that there was no recording of the confession alleged by Bunch. (App. at 1078-88, ECF No. 27-3 at 80-90.) Last, Paula Stone mentioned in her testimony that she visited Mann at Lieber. (App. at 1091, ECF No. 27-3 at 93.)

The PCR court evaluated trial counsel's performance under the standard set forth in Strickland. Relevant to this claim, the PCR court found:



> [T]rial counsel was not ineffective for failing to object to references to Applicant being housed at Lieber and for allowing prison guards to sit in close proximity to Applicant during trial. Counsel testified that Applicant was not in handcuffs or prison garb, and there were no references to Applicant being convicted of anything. In addition, counsel testified that she did not object to the potential juror's comment "I used to work for SCDC where he's at" because she did not want to draw attention to it. This Court finds that counsel properly noted her reasoning on the record.

(App. at 1922, ECF No. 27-4 at 424.)

As an initial matter, in denying and dismissing Mann's application, the PCR court found that trial counsel's testimony was credible and that Mann lacked credibility. (App. at 1921, ECF No. 27-4 at 423); see Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

The PCR court applied the Strickland standard, which is the applicable Supreme Court precedent. Mann has not shown the PCR court's determination of this issue was contrary to, or an unreasonable application of, federal law. See United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of Strickland, we apply a strong presumption that trial counsel's strategy and tactics fall within the wide range of reasonable professional assistance."); see also McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance.") Although trial counsel could not recall at the PCR hearing the precise reason she did not object the juror's statement, counsel did note that "maybe we made a decision that when the juror responds where he's at, that it wasn't overly clear[ ] who that person was referencing . . . ." (App. at 1694, ECF No. 27-4 at 196). The record shows trial counsel



declined the corrective instruction during *voir dire* because she did not want to "bring it to the attention of the jurors." (App. at 112, ECF No. 27-1 at 114.) The fact that trial counsel's strategy may have been unsuccessful is insufficient to demonstrate that her performance was deficient. See Roane, 378 F.3d at 404. Further, trial counsel's mention of Lieber in reference to the phone calls between Bunch and Mann was counsel's attempt to demonstrate that Bunch gave perjured testimony regarding Mann's alleged confession. (App. at 708, ECF No. 27-2 at 211.) Trial counsel was able to elicit from the investigative officer that all phone calls from Lieber are recorded and, after reviewing more than three hundred hours of calls between Mann and Bunch, the investigator Burnett was unable to uncover this alleged confession. (App. at 1078-88, ECF No. 27-3 at 80-90.) Since counsel effectively mitigated Bunch's testimony and effectively cross-examined Burnett, the court cannot say that the PCR court's conclusion that counsel's conduct here did not constitute deficient performance was clearly unreasonable. Mann has failed to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Similarly, the court finds the PCR court reasonably determined that trial counsel was not ineffective for failing to object to two prison guards sitting in close proximity to Mann during trial. As noted by trial counsel, Mann was not in handcuffs or prison garb, and there were no references to Mann being convicted of anything. (App. at 1787, ECF No. 27-4 at 289.) Rather, Mann alleges the "Lieber C.I. transportation guards in visible bullet proof vests with 'SCDC' brightly emblazoned on their chests and backs . . . sat directly behind [him] each day of the trial, and vicariously clothed [him] in prison garb, and aided in destroying Mann's presumption of innocence." (Pet., ECF No. 1 at 17.)



"Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Holbrook v. Flynn, 475 U.S. 560, 567 (1986) (quoting Taylor v. Kentucky, 436 U.S. 478, 485 (1978)). In Holbrook,

> the Court acknowledged that, unlike the use of courtroom shackles, the presence of identifiable security officers does not inherently prejudice a defendant. The Court recognized that "[j]urors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence." Accordingly, in ascertaining whether the presence of uniformed law officers during a criminal trial was so overwhelming as to be unconstitutional, a reviewing court must assess whether there was "an unacceptable risk . . . of impermissible factors coming into play." Under this standard, a Holbrook claim is difficult to establish, and a reviewing court must assess "the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial."

Hill v. Ozmint, 339 F.3d 187, 199 (4th Cir. 2003) (internal citations omitted) (quoting Holbrook, 475 U.S. at 569-72). In Holbrook, the Supreme Court determined that supplementing the customary eight courtroom security officers with four uniformed state troopers sitting on the first row of the spectator's section did not create an unacceptable risk of prejudice and, thus, did not violate the defendant's right to a fair trial. Holbrook, 475 U.S. at 570-71. Rather, the Supreme Court reasoned that the four troopers were likely to have been viewed simply as part of a normal official concern for safety and order of the proceedings. Id. In the case at hand, the court finds that the two guards near Mann with SCDC insignia failed to create an 'inherently prejudicial' circumstance or an 'unacceptable risk' of affecting the jury deliberations. See Spivey v. Head, 207 F.3d 1263, 1272-73 (11th Cir. 2000) (not inherently prejudicial to have unshackled defendant surrounded by, at times,

eight uniformed guards); see also Wilkens v. Lafler, 487 F. App'x. 983, 989-90 (6th Cir. 2012) ("Fairminded jurists could conclude that the presence of a few guards near [petitioner] with Department of Corrections insignia [on their uniforms] fails to create an 'inherently prejudicial' circumstance or an 'unacceptable risk' of affecting the jury deliberations.")  Mann is thus unable to establish that the presence of SCDC personnel at his trial was inherently prejudicial.  In addition, because Mann has presented no evidence that the jurors considered the presence of SCDC guards during their deliberations, he is unable to establish that he was actually prejudiced by the presence of these guards at his trial.  Finally, in light of the fact that the presence of the SCDC guards did not cause any prejudice to Mann, trial counsel was not ineffective for failing to object to their presence at trial.  See e.g., Sutton v. Bell, 645 F.3d 752, 756 (6th Cir. 2011).  The court cannot find that the state court decision is contrary to, or an unreasonable application of, clearly established federal law, nor is the state court's decision based on an unreasonable determination of the facts.  Consequently, the respondent's motion for summary judgment should be granted as to Ground Three.

7.    **Ground Five**

In Ground Five, Mann argues that he was denied his Sixth Amendment right to effective assistance of counsel by and through trial counsel's failure to present the testimony of readily available experts in the line of pathology in reference to the time of death of B.B.  (Pet., ECF No. 1 at 18.)  Mann reiterates, as argued by his PCR counsel, he was with his girlfriend Kristy Bunch from Tuesday the week of the murders until the time of his arrest; accordingly, the state's theory that B.B. was murdered on Monday made B.B.'s time of death critical to his case.  (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 27.)

At trial, Dr. Susan Presnell, the state's medical examiner, estimated B.B.'s time of death was four to six days prior to the discovery of her body.  Dr. Presnell calculated the postmortem interval ("PMI") in part by determining potassium levels in the eye's vitreous humor.  (App. at 931, ECF No. 27-2 at 434.)  Quoting the Journal of Forensic Sciences, trial counsel challenged Dr. Presnell's findings:  "The effects of chilling on the rate of rise of the potassium concentration in the vitreous humor clearly makes measurement of the potassium level less reliable as a means of estimating the length of postmortem interval than has previously been supposed."  (App. at 948, ECF No. 27-2 at 451.)  On redirect, Dr. Presnell testified that the "vitreous testing helped to define four to six [PMI]. . . along with the fly eggs as well, and the cold temperatures actually being there doesn't support the one to two-day type interval."  (App. at 952-53, ECF No. 27-2 at 455-56.)  On recross-examination, Dr. Presnell conceded that consideration of rigor and livor, without the potassium level of the vitreous, made possible a calculation of a PMI of forty-eight hours.  (App. at 959, ECF No. 27-2 at 462.)

At the PCR hearing, trial counsel was asked as follows:

Q.    [W]hy did y'all not hire an expert to deal with this because it was very critical to the time of death of [B.B.]?

A.    Because when we met with Dr. Presnell, she was pretty candid, and I think I crossed her about all of this, that it wasn't an exact science as to the vitreous fluids.  That there were a variety of different formulas that could be used to measure the potassium level.  And that she chose the one that would make it the greatest distance of time since the death, recognizing there were others that would put it at a lesser amount of days.  I think I then, on cross-examination, even asked her to perform one of those equations using yet another recognized formula, which placed it much more recent for the death of [B.B.] than the formula that she used and that she also testified that one formula was not superior to the other.  So we thought we could accomplish all of that with her.  She, I think, in her testimony certainly says that timing the death of a person is not exact, that they don't like to go down that road, that there are too many variables.  I do know, though, that I retained two



different experts regarding entomology and the bugs in the eyes. One that Mr. Butler referenced early, Mr. Butz, who has the body farm in Kentucky or wherever. And then also Lee Goff who is an expert and lived in Hawaii. With both of them, we sent the videotape from the crime scene, the autopsy, all the information, and they both gave us the same response which was, without actually having them eggs themselves to take a look at, they really couldn't testify for us because there was no way they were going to be able to date anything. So we made that effort regarding two different experts and just were unable to, without the eggs themselves, present something.

Q.     Were the eggs preserved by the medical examiner?

A.     No.

(App. at 1731-32, ECF No. 27-4 at 233-34.)

Dr. Janice Edwards Ross, a board certified forensic pathologist was called to testify at the PCR hearing. Dr. Ross testified that she had never used vitreous to establish a postmortem time interval. (App. at 1802, ECF No. 27-4 at 304.) Dr. Ross opined that vitreous was an "unreliable way to determine a postmortem interval." (App. at 1804, ECF No. 27-4 at 306.) Regarding Dr. Presnell's trial testimony on vitreous fluid, Dr. Ross noted that the doctor "did say that there is a range and it's not reliable, but she did put a time on it, but I wouldn't put any time on it as far as days go." (App. at 1806, ECF No. 27-4 at 308.)

Relevant to this claim, the PCR court determined:

Counsel testified that she retained two experts, one from Kentucky and one from Hawaii, and both experts indicated that they could not give an opinion on time of death without looking at the fly eggs so she could not call either expert as a witness at trial. She asserted that she was able to cross-examine the State's expert, Dr. Presnell, and she got Dr. Presnell to admit that there were other formulas that could produce a different time of death and that the vitreous fluid was not an exact science.

. . . .

Dr. Janice Ross testified that she is board certified in forensic pathology and has testified as an expert in court more than 70 times. She testified that she reviewed the autopsy report. Dr. Ross asserted that she conducts 800 autopsies a year and always collects vitreous fluid, but she has never used vitreous fluid to determine time



of death.  She testified that there are too many variables to determine a time interval, and it was her opinion that the test is unreliable.

. . . .

       This Court finds that counsel was not ineffective for failing to object to the admission of the vitreouos humor sample . . . .

. . . .

Accordingly, this Court finds the Applicant has failed to satisfy both prongs of <u>Strickland</u>.

(App. at 1917-27, ECF No. 27-4 at 419-29.)

After a careful review of the parties' pleadings and the entire record, the court finds that the PCR court did not unreasonably misapply clearly established federal law.  In the absence of any indication that an expert would have provided favorable evidence on B.B.'s time of death, the PCR court reasonably concluded that counsel's strategic decision to forego such an attempt to present expert testimony was not deficient.  The Supreme Court has instructed to begin any ineffective assistance inquiry with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995); <u>see also</u> <u>Sexton v. Finch</u>, 163 F.3d 874, 887 (4th Cir. 1998) (tactical decisions cannot be second-guessed by court reviewing collateral attack).  Here, trial counsel was able to elicit while cross-examining Dr. Presnell that vitreous was not an exact science.  As explained by her experts, without the fly eggs, a more accurate time of death for B.B. was not available.  The PCR court reasonably found that counsel's performance with respect to B.B.'s time of death was not constitutionally ineffective.  The PCR court's determination was not contrary to, nor an unreasonable application of <u>Strickland</u>.  Therefore, the respondent's motion for summary judgment should be granted as to Ground Five.

8.      **Ground Seven**

In Ground Seven, Mann asserts that he was denied his Sixth Amendment right to effective assistance of counsel as a result of trial counsel's failure to challenge and seek suppression of Mann's post-arrest statement illegally coerced from him upon arrest.  (Pet., ECF No. 1 at 22-23.) Mann argues that trial counsel was ineffective when she did not place him on the stand to testify to the conditions surrounding the giving of his statement to police because his statement was the product of fear, intimidation, and sexual assault.  Mann contends that the state court's decision on this claim is contrary to, or involves an unreasonable application of <u>Strickland,</u> and is also an unreasonable application of the facts.  (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 31-32.)

Prior to Mann's trial, the trial court held a hearing pursuant to <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), to consider whether to admit the statement Mann provided to law enforcement.  (App. at 41-72, ECF No. 27-1 at 43-72.)  The trial court heard testimony from Sergeant Robert Walker of the Charleston County Sheriff's Office.  Walker testified that he advised Mann of his constitutional rights, and that Mann understood his rights and freely agreed to waive his rights.  (<u>Id.</u>)  Mann did not testify.  The trial court found that the state had shown by a preponderance of the evidence that Mann's statements were voluntary.  (App. at 72, ECF No. 27-1 at 74.)

Trial counsel testified at the PCR hearing that she could not recall why Mann did not take the stand at the <u>Jackson v. Denno</u> hearing.  (App. at 1745-1746, ECF No. 27-4 at 247-248.)  The PCR court found that

> trial counsel properly challenged the voluntariness of Applicant's statements.  Mr. Butler represented Applicant during his <u>Jackson v. Denno</u> hearing, after which the trial court found that the statements were made freely and voluntarily.  Trial counsel also objected to the State reading Applicant's statement into the record during trial. This Court finds that Applicant was not prejudiced by counsel's failure to request a



> jury instruction regarding the jury's duty to determine voluntariness of Applicant's statement. Applicant did not confess to either murder in his statement. Rather, he asserted that there was a struggle and [B.B.] killed Mr. Tobias, and then he never saw [B.B.] again. Applicant's admissions to those other than law enforcement [were] more damaging to his defense than his statement to law enforcement. Applicant has failed to show that the outcome of the trial would have been different if counsel had requested such a jury charge.

(App. at 1922, ECF No. 27-4 at 424.)

This court gives deference to credibility findings by the state court. Wilson v. Ozmint, 352 F.3d 847, 858-59 (4th Cir. 2003). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008). Even assuming arguendo that counsel was deficient in failing to call Mann as a witness during the Jackson v. Denno hearing, counsel objected to the state's reading applicant's statement at trial. Further, Mann failed to present any specific evidence at his PCR hearing that his statements were not given freely and voluntarily. Therefore, Mann has failed to meet his burden of showing that the outcome of the trial would have been different if he had testified during the Jackson v. Denno hearing. Accordingly, the PCR court reasonably found that Mann failed to prove the first prong of Strickland—specifically, that counsel failed to render reasonably effective assistance under prevailing professional norms. The PCR court further reasonably found that Mann failed to prove the second prong of Strickland—specifically, that he was prejudiced by counsel's performance. The state court's factual determination was not unreasonable, nor the did the state court unreasonably apply federal law. Therefore, summary judgment should be granted as to Ground Seven.

9.      **Ground Nine**

In Ground Nine, Mann argues that he was denied his Sixth Amendment right to effective assistance of counsel as a result of trial counsel's failure to object to drug-related and other inadmissible prior bad acts testimony admitted through the state's witness, Kristy Bunch. (Pet., ECF No. 1 at 24-25.)

Bunch was Mann's former girlfriend. Initially, Mann believed Bunch would testify on his behalf. Mann seeks relief based on the following character evidence elicited from Bunch at trial:

> Q.    What did you all talk about then?
> A.    They had gone and done something that they were proud of. They were, like, busted someone's house up or something; one of Dan's girlfriend's boyfriends that he's mad at. I didn't ask what they actually did. I didn't want to know. But they were just all, you know, ramped up about whatever they had done.
>         . . . .
> Q.    Did he want to talk to other people about other things?
> A.    Yes, he did. He wanted to talk to Dan about getting drugs together to have them --

(App. at 626, 635, ECF No. 27-2 at 129, 138.) Counsel did not object to Bunch's first statement; however, she did object to the second statement, and trial counsel subsequently moved for a mistrial. (App. at 636, ECF No. 27-2 at 139.) The trial court refused to grant a mistrial but did adopt a curative instruction for the jury to disregard any references from Bunch regarding drugs.

Relevant to this claim, the PCR court held:

> This Court finds that counsel properly moved to exclude prior bad acts under Lyle and Rule 404(b), SCRE, and properly objected when prior bad acts were referenced. Counsel objected during Kristy Bunch's testimony when Ms. Bunch mentioned Applicant's warrants and probation officer. Counsel later made a motion for a mistrial when Ms. Bunch testified that Applicant wanted to call a friend to arrange to get drugs together.

(App. at 1923, ECF No. 27-4 at 425) (internal citations omitted).



Strickland does not guarantee perfect representation, only a "reasonably competent attorney." Strickland, 466 U.S. at 687 (quoting McMann v. Richardson, 397 U.S. 759, 770 (1970)). Representation is constitutionally ineffective only if it "so undermined the proper functioning of the adversarial process" that the defendant was denied a fair trial. Strickland, 466 U.S. at 686. There is no expectation that competent counsel will be a flawless strategist or tactician. See Harrington, 562 U.S. at 110. Here, the PCR court did not unreasonably apply federal law in concluding that trial counsel was not ineffective for failing to timely object to the introduction of 404(b) evidence regarding Mann's drug activity at trial. The record indicates that trial counsel attempted to exclude 404(b) evidence from trial; first in a pretrial hearing, second in a pretrial ruling, and then as cited above when she moved for a mistrial in response to Bunch's trial testimony. (App. at 28-39, 144, 636, ECF No. 27-1 at 30-41, 146, ECF No. 27-2 at 139.) While counsel did not object to Bunch's first statement regarding busting up a house, she did object to Bunch's statement regarding drug activity and immediately requested a mistrial. Although the mistrial was not granted, a curative instruction was issued to the jury. Courts "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." Greer v. Miller, 483 U.S. 756, 767 n. 8 (1987) (citing Richardson v. Marsh, 481 U.S. 200, 208 (1987) and Bruton v. United States, 391 U.S. 123, 136 (1968)); see also United States v. Olano, 507 U.S. 725, 740–741 (1993) (" '[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them' ") (citing Francis v. Franklin, 471 U.S. 307, 324, n. 9 (1985)). Here,

this court has "no reason to believe that the jury in this case was incapable of obeying the curative instructions." Greer, 483 U.S. at 767 n.8.  In sum, fairminded jurists would not unanimously agree that counsel's actions in response to Bunch's testimony were deficient, nor that Mann was prejudiced.  See Harrington, 562 U.S. at 103.  Accordingly, summary judgment should be granted on Ground Nine.

**10.    Ground Ten**

In Ground Ten, Mann asserts that he was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to object to the state's improperly arguing the guilty pleas of Mann's co-defendants, Michael Crumb and Eric Zack, as evidence to infer guilt upon Mann, and commenting upon Mann's exercising his constitutional rights to a jury trial, and to put the state to its burden of proving him guilty beyond a reasonable doubt.  (Pet., ECF No. 1 at 25-26.)

Specifically, Mann argues that the following comment made by the solicitor at closing amounted to an improper comment on his right to remain silent:

> Under the law, ladies and gentlemen, as I said, the hand of one is the hand of all.  If a crime committed by two or more persons, [B.B.] and Anthony Mann, who are acting together in the commission of that offense, the act of one is the act of all.  This is true if there are two people or more than two people involved in the act.
>
> Eric Zack, Michael Crumb pleading guilty.  The hand of one is the hand of all.

(App. at 1496, ECF No. 27-3 at 498.)

Pertinent to this claim, trial counsel was questioned at the PCR hearing as follows,

> Q.    Did you at any point in time consider that [Eric Zack and Michael Crumb have taken responsibility] as an indirect comment on Mr. Mann's right to go to a jury trial and consider objecting?
> A.    I'm sorry.  For what reason again?



Q.      For the fact that she's alleging that Eric Zack and Michael Crum[b] have taken responsibility for their actions, but Mr. Mann's not so, you know, that's what she's trying to get the jury to infer. Did you ever consider objecting to that as being an improper comment on Mr. Mann exercising his right under the U.S. Constitution to be presumed innocent until proven guilty ---

A.      No, I didn't think -- I'm sorry.

Q.      --- that would be part of his trial right -- to have a jury trial basically?

A.      I don't think I did because I don't know that that's the way I heard it. I think it was -- I think the way I took that statement was they've come in here and told you what they did. They've taken responsibility for it. I don't think I looked at it the way that you're asking. I don't think I looked at it that way.

Q.      Okay. I'm sorry. I guess it's open to interpretation. I just wanted to ask if you heard it and how you felt. . . . And, once again, this can be taken obviously many different ways, too, but I'm trying to get to it as a whole. On line 9 and 10, Eric and Zack and Michael Crum[b] pleaded guilty. The hand of one is the hand of all. At any point, did you think that that had anything to do as far as -- obviously, that's the law when the Judge charges them. But at any point, did you consider that an improper comment?

A.      I don't think I did.

(App. at 1764-1765, ECF No. 27-4 at 266-267.) In determining that counsel was not ineffective here, the PCR court explained,

> [C]ounsel was not ineffective for failing to object to the Solicitor's comment that the two co-defendants had pled guilty and taken responsibility for their actions and that the hand of one is the hand of all. Counsel testified that she did not think the comment was a violation of Applicant's right to a jury trial. Rather, counsel testified that she believed the Solicitor was pointing out that Mr. Zack and Mr. Crumb have taken responsibility for their actions.

(App. at 1926, ECF No. 27-4 at 428.)

Mann cannot show that the PCR court unreasonably applied federal law in addressing this claim and furthermore, Mann has failed to show that the PCR court made an unreasonable determination of the facts in addressing this claim. As conceded above, the solicitor's comments were open to interpretation. Crumb and Zack both testified regarding their pending plea bargains regarding the murder of Tobias. The PCR court's factual finding that the solicitor's comments were



related to Crumb and Zack taking responsibility for their actions, and not intended nor directly aimed at Mann's exercise of his right to a jury trial, is supported by the record. Thus, the factual findings are not objectively unreasonable and they cannot serve as the basis for habeas corpus relief. § 2254(d)(2). Furthermore, the PCR court's findings are entitled to a presumption of correctness, which a habeas petitioner must rebut by clear and convincing evidence. § 2254(e)(1); see Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations"); see also United States v. Jones, 471 F.3d 535, 542 (4th Cir. 2006) (a prosecutor's statement does not amount to an improper comment on a defendant's refusal to testify unless, in context the offending language was "manifestly intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify"). This court must ask whether the PCR court's decision denying Mann's claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. For the reasons discussed herein, Mann has not made this showing. Consequently, the respondent's motion for summary judgment should be granted as to Ground Ten.

### 11.    Ground Twelve

In Ground Twelve, Mann argues that he was denied his Sixth Amendment right to effective assistance of counsel as a result of trial counsel's failure to object to the solicitor's improperly commenting upon, vouching for, and placing the imprimatur and prestige of the government behind the state's law enforcement witnesses, as well as the state's case. (Pet., ECF No. 1 at 27-28.) The



respondent asserts that Mann's Ground Twelve is procedurally barred as the claim was abandoned on PCR appeal.  (Respt.'s Mem. Supp. Mot. Summ. J., ECF No. 27 at 45.)

As discussed above, the court finds that Mann's Ground Twelve is procedurally barred because it was not presented to the Supreme Court of South Carolina in Mann's petition for a writ of certiorari.  (See ECF No. 27-8.)  Because this ground was not fairly presented to the Supreme Court of South Carolina, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

Mann asserts that pursuant to the narrow exception established in Martinez v. Ryan, 132 S. Ct. 1309 (2012), PCR counsel's ineffectiveness provides cause to excuse the procedural default and adjudicate his claim on the merits.  (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 42-43.) The court disagrees.

In Martinez, the Supreme Court elaborated,

[W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.  The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

132 S. Ct. at 1318.  Accordingly, Mann may establish cause for the default of these grounds if he demonstrates that (1) his PCR counsel was ineffective and (2) the underlying ineffective assistance



of trial counsel claim is a substantial one, *i.e.*, it has some merit.  However, the <u>Martinez</u> Court did not extend its holding to PCR appellate counsel, but only counsel in initial review collateral proceedings.  <u>See</u> <u>e.g.</u>, <u>Crowe v. Cartledge</u>, C/A No. 9:13-cv-2391 DCN, 2014 WL 2990493, at *6 (D.S.C. July 2, 2014) ("[I]neffective assistance of PCR appellate counsel is not cause for a default."); <u>Cross v. Stevenson</u>, Civil Action No. 1:11-cv-02874-RBH, 2013 WL 1207067, at *3 (D.S.C. Mar. 25,  2013) ("<u>Martinez</u>, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default.").  Therefore, because the procedural default of Ground Twelve occurred on PCR appeal in that it was not raised in the petition for writ of certiorari, Mann may not rely on <u>Martinez</u> to establish cause with respect to this ground. Accordingly, Ground Twelve is procedurally barred from consideration by a federal court and summary judgment should be granted.

### 12.    Ground Eighteen

In Ground Eighteen, Mann contends that he was denied his Sixth Amendment right to effective assistance of counsel as a result of the overwhelming cumulative prejudicial effect of each of the enumerated errors committed by trial counsel which also effectively denied Mann his most fundamental rights of due process and a fair and public trial.  (Pet., ECF No. 1 at 33-34.)  In his response to the respondent's motion for summary judgment (Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 50 at 43-44), Mann concedes that his independent claim of cumulative error is such a claim that has been rejected by the United States Court of Appeals for the Fourth Circuit.  <u>See</u> <u>Fisher v. Angelone</u>, 163 F.3d 835, 852 (4th Cir. 1998) (announcing ineffective assistance of counsel claims "must be reviewed individually, rather than collectively").  Accordingly, Mann is not entitled to relief on this ground and summary judgment should be granted as to Ground Eighteen.



## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary

judgment (ECF No. 26) be granted and Mann's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 15, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).