IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Anthony Mann (242498), | ) | Civil Action No. 0:15-163-RMG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Warden of Lee Correctional, | ) | |
| Cecelia Reynolds, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation of the Magistrate

Judge (Dkt. No. 52), recommending summary judgment for Respondent and denial of the

petition for a writ of habeas corpus. For the reasons given below, the Court adopts the Report

and Recommendation as the Order of the Court and grants Respondent's motion for summary

judgment.

## I.    Background

### A.    Facts [1]

On January 7th, 2002, Petitioner Anthony Mann was riding in an automobile with

Michael Crumb and Eric Zack when he was called by Beverly Blake. Ms. Blake explained to

Petitioner that her roommate, Dante Tobias, was trying to prostitute her against her will. She

wanted to leave Mr. Tobias, and so requested Petitioner, Mr. Crumb, and Mr. Zack to pick her up

in their vehicle. Ms. Blake also told Petitioner that Mr. Tobias kept money and drugs inside a

---

[1] This recitation of the facts is a summary of the facts as given by the South Carolina Court of
Appeals in its denial of Petitioner's direct appeal on January 11, 2007 (Dkt. No. 27-4, at 131–
33).

safe in his house, and the two made plans to steal those items. Petitioner, together with Mr. Crumb and Mr. Zack, first visited the residence of Peter Davies, where Mann obtained a gun.

Petitioner entered Mr. Tobias's house first, followed by Mr. Crumb, with Mr. Zack remaining in the car. Upon entering the living room, Mr. Crumb saw Petitioner pointing a gun at Mr. Tobias's head while Petitioner and Mr. Tobias discussed the purported prostitution of Ms. Blake. Mr. Tobias provided the combination to the safe, but neither Ms. Blake nor Mr. Crumb could open it. Eventually, they filled trash bags with items from around the house and left. As they sat in the car, they heard a gunshot and a scream. Petitioner emerged from the house and told them that he had shot Mr. Tobias in the leg. Mr. Tobias, however, was dead, struck in his back by a bullet that exited through his chest.

The group then returned to Mr. Davies' house, where they divided the loot. Terrance Hudson came to the house and drove Petitioner, Mr. Davies, and Ms. Blake to another vehicle in a parking lot. Eventually all four arrived at the residence of Nicole O'Connell. Before leaving Ms. O'Connell's home with Petitioner and Mr. Davies, Ms. Blake told Tiffany Mercado that Petitioner would be giving her a ride to Ms. Mercado's house. Ms. Blake was never heard from or seen alive again.

On January 13th, 2002, the body of Beverly Blake was discovered in a secluded, wooded area. She had been shot three times in the head, once in the back, and once in the chest. She appeared to be wearing the same clothes she was wearing when last seen.

Petitioner was arrested and indicted for the armed robbery and murders of Mr. Tobias and Ms. Blake. In addition to testimony establishing the facts as described above, the testimony of several witnesses indicated that Petitioner murdered Ms. Blake. Mr. Zack testified Petitioner told him that he planned to "get rid of" Ms. Blake. Dustin James testified that Petitioner

-2-

indicated to him that he killed Ms. Blake because she knew that he had killed Mr. Tobias, and that Petitioner stated that Ms. Blake was "in the woods." Krystal Lackey testified that Petitioner said that he "found out that [Ms. Blake] had given some information and supposedly had told the police, and his words were that he had to kill that nigger bitch." Mervin Menier, a cellmate with Petitioner, testified that Petitioner told him that he shot Mr. Tobias, and that he also shot Ms. Blake in a secluded area that same night because she was becoming nervous. Ms. Kristy Bunch, Petitioner's girlfriend at the time, testified that in the course of her correspondence with Petitioner after his arrest he sent her statements and testimony for others to give on his behalf—specifically, to intimate that Mr. Davies killed Ms. Blake—and that in one telephone conversation he said, "[I] killed the fucking bitch." (Tr. 661–62.)

## B.    Procedural History

Petitioner was indicted for two counts of murder and for armed robbery, and was convicted on September 24, 2002 in the Court of General Sessions for Charleston County. He was sentenced to two terms of life imprisonment plus thirty years. On January 11, 2007, the South Carolina Court of Appeals affirmed the conviction. Petitioner filed a *pro se* application for post-conviction relief ("PCR") on January 7, 2008, claiming many instances of ineffective assistance of counsel and actual innocence. PCR counsel amended his *pro se* application to raise 31 ineffective assistance of counsel claims. The PCR court held a two day hearing on November 14 and 18, 2011. On January 26, 2012, it denied Petitioner's PCR application. Petitioner filed the instant Petition for a Writ of Habeas Corpus on January 6, 2015, *pro se*. On September 4, 2015, Ms. Elizabeth Franklin-Best appeared on behalf of Petitioner. Petitioner's response to Respondent's motion for summary judgment and objections to the Report and Recommendation of the Magistrate Judge are both prepared with the assistance of counsel.

## II.    Legal Standard

### A.    Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

### B.    Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d

-4-

1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### C.    Habeas Corpus

#### 1.    Standard for Relief

Claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also White*, 134 S. Ct. at 1702 (stating that "'[a]s a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Harrington*, 562 U.S. at 103).

Therefore, when reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and providing that "even clear error will not suffice") (internal quotation marks and citation omitted). Moreover, review of a state court decision does not require an opinion from the state court explaining its reasoning. *See Harrington* at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. *Id.* Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. *Id.* at 102. And state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Default

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a

habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted).

Generally, a federal habeas court should not review the merits of claims procedurally defaulted (or barred) under independent and adequate state procedural rules. *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### D.    Ineffective Assistance of Counsel

When claiming habeas relief due to ineffective assistance of counsel at trial, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court must apply a "strong presumption" that trial counsel's representation fell within the "'wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth

Amendment." *Harrington*, 131 S. Ct. at 787. This is a high standard, one in which a habeas petitioner alleging prejudice must show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would have been "reasonably likely" different but for counsel's error is not dispositive of the "prejudice" inquiry. Rather, the Court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S. Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S. Ct. at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Id.* In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s 'deferential standards.'" *Id.*

Courts are reluctant to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 131 S. Ct. at 790. This rule, however, is not absolute where the purported strategic decision is based upon an error or ignorance of the law by trial counsel. *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2nd Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy"); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the Petitioner's options is "erected upon . . . a rotten foundation" and is not entitled to deference).

## III.    Analysis

Petitioner asserts twenty grounds for habeas relief. The Magistrate Judge determined that Petitioner voluntarily abandoned Grounds Four, Six, Eight, Eleven, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Nineteen. Petitioner did not object to that determination in his Objections to the Report and Recommendation. The Court therefore finds those grounds abandoned and grants summary judgment for Respondent as to those grounds.

### A.    Ground One

Petitioner asserts that he was denied his Sixth Amendment right to effective counsel and his right to a public trial because four pretrial hearings were closed to the public. Yet Petitioner admits that two of those hearings were closed with trial counsel's consent: a hearing on a motion by the Berkeley County Sheriff's Department to quash a subpoena from Petitioner and a hearing on Petitioner's allegation that the solicitor's office was pressuring witnesses not to testify for the defense. The other two hearings were continuations of those two hearings.

Petitioner does not argue that trial counsel erred in consenting to the closure of those four hearings. Instead, Petitioner argues that trial counsel only sought to exclude the solicitor, not the public, from those hearings—in other words, that trial counsel was asking not for closed hearings, but for the solicitor to be excluded from public hearings in the case that she was prosecuting. That suggestion is without merit. Petitioner also asserts that he only asked that two hearings be closed. That suggestion is also without merit. The "second" hearing was just a continuation of the "first"—to allow the Sheriff's Department an opportunity to respond to Petitioner's arguments in favor of a subpoena. The "fourth" hearing was just another hearing on the allegation of witness intimidation—a continuation of the "third" hearing. Petitioner also asserts that trial counsel objected to being excluded from the second hearing—the follow-up hearing regarding Petitioner's subpoena to the Sheriff's Department. In opposing Petitioner's

subpoena for the complete file of an ongoing homicide investigation, the Sheriff asked the court to conduct an *in camera* review because the release of some of that file would have placed persons in physical danger. There is no evidence that trial counsel objected to closing that review *to the public*.

Petitioner's argument rests on a technicality: that the trial court erred when held closed hearings because it did not record specific findings as to why, even though the record makes it perfectly clear why those hearings were closed: "petitioner's right to a public trial was violated by the judge's excluding the public from four different hearings without making the necessary *Waller* findings." (Pet'r's Obj. to R. & R. 5, Dkt. No. 53; *see also* Pet'r's Resp. Opp'n Resp't's Mot. for Summ. J. 16–17.)  But even that argument is, technically, without merit.  *Waller v. Georgia* does indeed require specific findings to be made when a court decides to close criminal proceedings to the public *over the objections of the accused.*  467 U.S. 39, 47 (1984) ("[W]e hold that under the Sixth Amendment any closure of a suppression hearing *over the objections of the accused* must meet the tests set out in *Press–Enterprise* and its predecessors (emphasis added)); *see also id.* at 42 n.2 (noting that "petitioners Waller, Thompson, Eula Burke, and W.B. Burke lodged an objection to closing the hearing . . . petitioner Cole concurred in the prosecution's motion to close the suppression hearing . . . [t]he state courts may determine on remand whether Cole is procedurally barred from seeking relief as a matter of state law").

The Magistrate Judge italicized those same words from *Waller* in the Report and Recommendation (R. & R. 21); in response, Petitioner objects that the Magistrate Judge "essentially found that since petitioner's counsel asked for two of these hearings to be outside the presence of the state—due to concerns about revealing defense strategy and concerns that witnesses would be intimidated since petitioner was alleging law enforcement misconduct—that

-10-

*Waller* does not apply" (Pet'r's Obj. to R. & R. 2). Actually, the Magistrate Judge found that because the Petitioner asked for two hearings to be closed, and because two other hearings were just continuations of those two hearings, *Waller* does not apply *to those four hearings*. The Court agrees. Other than those four hearings, Petitioner's trial was open to the public. The Court therefore adopts the Report and Recommendation and grants summary judgment as to Ground One.

**B.     Ground Twenty (follows Ground One in the Report and Recommendation)**

Petitioner asserts that his counsel on direct appeal was constitutionally ineffective when he failed to move the court to unseal the transcripts of the four closed hearings. Because appellate counsel never requested those transcripts, they were eventually destroyed pursuant to South Carolina Appellate Court Rule 607. Even if appellate counsel's performance were, *arguendo*, assumed deficient, Petitioner must also satisfy the *Strickland* prejudice prong—here, that, but for appellate counsel's failure to brief the witness intimidation issue, he would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. 259, 285–89 (2000). Petitioner does not even attempt to suggest what error the trial court committed that would have led the South Carolina Court of Appeals to overturn Petitioner's criminal convictions. This Court cannot simply assume that the trial court or trial counsel committed some constitutional error that requires setting aside Petitioner's convictions. Rather, Petitioner bears the burden to show prejudice from a constitutional error. *Strickland*, 466 U.S. at 696. To survive summary judgment, Petitioner must at least attempt a *prima facie* showing. *See Celotex*, 477 U.S. 317, 323 (1986). Petitioner proffers nothing. The Court therefore adopts the Report and Recommendation and grants summary judgment for Respondent as to Ground Twenty.

### C.    Ground Two

Petitioner asserts that trial counsel was ineffective in failing to object to the introduction into evidence of a shotgun that was not connected to Petitioner or to the charged murders. Petitioner argues that the shotgun was prejudicial with no probative value, and that the "clear implication" of introducing the shotgun into evidence was that the weapon used to kill Ms. Blake. Under *Strickland*, an error is prejudicial only if there is a reasonable probability that, but for the error, a different result would have obtained at trial. *Strickland*, 466 U.S. at 694. Petitioner's purported "clear implication" is defeated by law enforcement testimony that the shotgun was not used to kill Ms. Blake and that Ms. Blake was killed with a .38 special or .357 Magnum (Trial Tr. 1125, Dkt. No. 27-3). Moreover, Petitioner was convicted on the testimony of many witnesses. This shotgun had no apparent impact whatsoever on the verdict. The Court therefore adopts the Report and Recommendation and grants summary judgment for Respondent as to Ground Three.

### D.    Ground Three

Petitioner asserts that he was lacked effective counsel because trial counsel failed to object to references to his being held at Lieber Correctional Institution ("Lieber"), and because two uniformed guards were seated near him during trial. There is no allegation that Petitioner's status at Lieber was improperly emphasized or argued to the jury. Rather, in the course of proceedings a passing mention of Lieber occurred four times. First, in *voir dire* a potential juror stated that he was formerly employed at Lieber "where [Petitioner is] at." Trial counsel declined a curative instruction because she did not want to bring attention to the comment. Second, trial counsel elicited a reference to Lieber when cross-examining a witness: when Ms. Bunch testified that Petitioner confessed guilt to her after his arrest (while at Lieber), trial counsel challenged that assertion by pointing out that such conversations would have been recorded by the prison.

-12-

Third, an investigator testified that there was no such recorded conversation. Fourth, another witness testified that she visited Petitioner at Lieber.

The PCR court found that trial counsel's performance under *Strickland* was not deficient. Trial counsel's strategic decision not to seek a curative instruction in *voir dire* was reasonable, as was trial counsel's strategic decision to elicit testimony regarding Lieber in an attempt to mitigate potentially damning testimony from Ms. Bunch. This Court agrees. Furthermore, this Court does not see how Petitioner possibly was prejudiced. The Court must give the jurors some credit. Petitioner was on trial for multiple homicides. A juror reasonable enough to be charged with determining his guilt is a juror reasonable enough to realize that he likely was detained within a secure facility. The four isolated and passing mentions of Lieber in this case are in no way equivalent to presenting the defendant to the jury in shackles and prison garb. The record admits no reasonable possibility that any juror would have voted to acquit but for those four mentions of Lieber—especially when trial counsel introduced Lieber's security procedures to mitigate inculpating testimony.

Petitioner's assertion of prejudice from the presence of two uniformed guards near him at trial is foreclosed by the Supreme Court's decision in *Holbrook v. Flynn*, 475 U.S. 560 (1986). In *Holbrook*, four uniformed troopers were positioned near the defendant. The Supreme Court held that did not create an unacceptable risk of prejudice. Here, Petitioner alleges that two uniformed guards wer positioned near him. There is no material distinction between this case and *Holbrook*. *Holbrook* therefore controls.

The Court therefore adopts the Report and Recommendation and grants summary judgment for Respondent as to Ground Three.

### E.    Ground Five

Petitioner asserts that trial counsel was ineffective in failing to present the testimony of readily available pathology experts regarding Ms. Blake's time of death. Petitioner claims as an alibi that he was with his girlfriend, Ms. Bunch, from Tuesday, January 8, until his arrest. The State's theory is that Ms. Blake was murdered on Monday, January 7 (the same day as the murder of Mr. Tobias). Petitioner claims that proper forensic science would have placed Ms. Blake's time of death within his alibi period. The disputed forensic issue is the use of potassium levels in ocular vitreous fluid to determine time of death; Petitioner claims that is an unreliable method.

Trial counsel did retain two expert pathologists, both of whom indicated that they could not give an opinion on time of death without looking at the fly eggs collected from Ms. Blake's eyes. Those eggs were not retained; therefore, Petitioner's experts could not testify as to a particular time of death. Trial counsel therefore decided to forego expert testimony and instead to cross-examine the State's expert pathology about the deficiencies in the method she used to determine time of death.

Petitioner did present an expert pathologist witness at the PCR hearing. But the PCR court nonetheless found that trial counsel's strategic decision to forego expert witness testimony was not constitutionally deficient performance. The PCR court concluded that without any indication that an expert would have provided favorable evidence on Ms. Blake's time of death, counsel's decision to forego such expert testimony was not constitutionally deficient. The Magistrate Judge found that the PCR court's determination was a reasonable application of *Strickland.*

Petitioner now objects that the issue is not trial counsel's failure to present an expert to testify as to the time of death (an unpersuasive claim given that trial counsel went as far afield as

Hawaii in search of such an expert) but trial counsel's failure to present an expert to impeach the

State's expert by opining that the State's expert used an unreliable and disfavored method to

determine Ms. Blake's time of death.  That argument elides the fact that the State did not assert

that forensic science established a January 7 time of death to the exclusion of later dates:

> Because the law is going to be important in this case, especially with regards to
> January 7th.  And I'm going to go through some of the law and I'm going to go
> through some of the facts, but one bell I want to un-ring right now is when Ms.
> Shealy talked to you about the State needing evidence to fit that [Ms. Blake] died
> on the 7th: They have to show that she died on the 7th; they don't have a case;
> they have to show it.  Who says she died on the 7th?  Who says [Ms. Blake] died
> on the 7th?  I will tell you who.  Anthony Mann says Brownie died on the 7th,
> that's who.  Anthony Mann tells Mervin Menier 'she died after' the robbery.
>
> . . .
>
> And they tell you those formulas can give you an indication.  They cannot
> pinpoint it, but they can give you an indication.  And when you take that into
> consideration with everything else, the window, the window is around four to six
> days, which puts us at the Tuesday after Dante was killed.
>
> And I asked Dr. Presnell [the State's pathologist], Could it have happened the
> Monday?  She said, Yes, it could have happened the Monday.  That formula just
> gives you an idea.

(Trial Tr. 1567–68, 1588 (State's closing argument), Dkt. No. 27-3.)  The State's expert testified

that the time of death could have been on January 7. A rebuttal pathologist would have

accomplished nothing for Petitioner not accomplished by trial counsel's cross-examination of the

State's pathologist.  Even if the vitreous fluid method were completely and devastatingly

impeached as useless, that would not would *exclude* a January 7 time of death.  The defense

needed an expert witness who would exclude a January 7 time of death.  Trial counsel attempted

diligently to find such an expert but could not find one.  Thus, the PCR court reasonably

determined that trial counsel's performance was not deficient under *Strickland.*

The Court therefore adopts the Report and Recommendation and grants summary

judgment for Respondent regarding Ground Five.

### F.    Ground Seven

Petitioner asserts that trial counsel was ineffective in failing to challenge and seek suppression of Petitioner's post-arrest statement, which Petitioner alleges was the illegally coerced product of fear, intimidation, and sexual assault.  Before trial, the trial court held a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), to consider whether to admit the statement Petitioner provided to law enforcement.  In that statement, Petitioner asserted that Ms. Blake killed Mr. Tobias and that he never saw Ms. Blake after that.  (PCR Op. 12, Dkt. No. 27-4, at 424.)  Sergeant Walker of the Charleston County Sheriff's Office testified that Petitioner was advised of his constitutional rights, that he understood his rights, and that he freely agreed to waive those rights when he gave a statement.  Petitioner did not testify.

Petitioner alleges that trial counsel was ineffective in not presenting Petitioner as a witness at that hearing.  The PCR court, after hearing testimony from trial counsel and from Petitioner on this issue, found that trial counsel was not ineffective:

> This Court finds that trial counsel properly challenged the voluntariness of Applicant's statements.  Mr. Butler represented Applicant during his *Jackson v. Denno* hearing, after which the trial court found that the statements were made freely and voluntarily.  Trial counsel also objected to the State reading Applicant's statement into the record during trial.  This Court finds that Applicant was not prejudiced by counsel's failure to request a jury instruction regarding the jury's duty to determine the voluntariness of Applicant's statement.  Applicant did not confess to either murder in his statement.  Rather, he asserted that there was a struggle and Ms. [Blake] killed Mr. Tobias, and then he never saw Ms. [Blake] again.  Applicant's admissions to those other than law enforcement was more damaging to his defense than his statement to law enforcement.

(PCR Op. 13, Dkt. No. 27-4, at 424.)  The Magistrate Judge could find nothing unreasonable in the PCR court's findings.  The Court agrees.

Petitioner objects that the Report and Recommendation erroneously reads the PCR court's decision to rest on witness credibility findings that the PCR court did not in fact make.  The PCR court's finding that Petitioner failed to demonstrate prejudice is indeed well-supported

by the record even if the credibility of witnesses is not considered. But, contrary to Petitioner's objections (Pet'r's Obj. to R. & R. 19), the PCR court *did* make witness credibility findings relevant to this issue. (PCR Op. 12, Dkt. No. 27-4, at 423.) The PCR court found that Petitioner's testimony that trial counsel never informed him about his right to testify at the *Jackson* hearing was not credible. The PCR court found Petitioner's testimony that he would have testified at the *Jackson* hearing was not credible. The PCR court found that Petitioner's testimony concerning the involuntary nature of his statement to police, quoted at length in Petitioner's Objections to the Report and Recommendation, was not credible. As Petitioner concedes,

> "This court gives deference to credibility findings by the state court. *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2013). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

(Pet'r's Obj. to R. & R. 19 n. 7 (error in citation corrected).) The PCR court fully addressed the issue of whether trial counsel was ineffective in presenting Petitioner's claim that his pretrial statements were coerced by police. It found that the only evidence supporting Petitioner's position—his own testimony—lacked credibility. Petitioner offers nothing approaching clear and convincing proof that the PCR court's finding was incorrect. Therefore, the Court adopts the Report and Recommendation and grants summary judgment for Respondent.

### G.    Ground Nine

Petitioner asserts that trial counsel was ineffective in failing to object to drug-related and other inadmissible prior bad act testimony of State's witness Kristy Bunch. Ms. Bunch made two purportedly objectionable statements: one about "bust[ing] someone's house up" and one about drug activity. (Trial Tr. 579 & 588, Dkt. No. 27-2.) Trial counsel failed to object to the first statement but did object to the second statement. The trial court gave a curative instruction

regarding the second statement. As the Report and Recommendation explains, *Strickland* only guarantees a "reasonably competent attorney," not a perfect one. Counsel is not constitutionally deficient merely for possibly missing one objection. Nor does Petitioner seriously attempt to explain how this ground for relief satisfies the *Strickland* prejudice standard. Instead, Petitioner simply offers conclusory statements that he was somehow prejudiced. (*See* Pet'r's Resp. 35–36; Pet'r's Obj. to R. & R. 24.) The Court therefore adopts the Report and Recommendation and grants summary judgment as to Ground Nine.

### H.    Ground Ten

Petitioner asserts that trial counsel was ineffective for failing to object when the State improperly argued the guilty pleas of Petitioner's codefendants, Mr. Crumb and Mr. Zack, as evidence from which to infer the guilt of Petitioner. Specifically, Petitioner argues that a portion of the solicitor's closing statement—her statement, "Eric Zack, Michael Crumb pleading guilty"—was an improper comment on his exercise of his constitutional right to a jury trial. At the PCR hearing, trial counsel testified that she did not object to the solicitor's statement because she thought the solicitor was merely pointing out that Mr. Zack and Mr. Crumb had taken responsibility for their actions. The PCR court credited that testimony. This Court cannot find that to be an unreasonable determination—*i.e.*, a determination based on error evident "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The Court therefore adopts the Report and Recommendation and grants summary judgment for Respondent as to Ground Ten.

### I.    Ground Twelve

Petitioner asserts that trial counsel was ineffective for failing to object to the solicitor improperly bolstering the State's law enforcement witnesses. Respondent argues that Ground Twelve is procedurally barred because the issue was not presented to the South Carolina

Supreme Court in Petitioner's petition for a writ of certiorari. (Dkt. No. 27-8.) Petitioner does not claim that the issue was presented to the South Carolina Supreme Court; instead, Petitioner claims that the exception of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), excuses the procedural default. The Magistrate Judge rejected that claim as a legal impossibility: *Martinez* only allows ineffectiveness of initial review counsel to excuse a procedural default. This Court has repeatedly held that *Martinez* does not hold that the ineffective assistance of counsel in a PCR appeal excuses a procedural default. *See, e.g., Crowe v. Cartledge*, Civ. No. 9:13-2391-DCN, 2014 WL 2990493, at *6 (D.S.C. July 2, 2014); *Cross v. Stevenson*, Civ. No. 1:11-02874-RBH, 2013 WL 1207067, at *3 (D.S.C. Mar. 25, 2013).

Petitioner objects that *Martinez* nonetheless does apply here because the PCR appellate counsel was also counsel at the PCR hearing. (Pet'r's Obj. to R. & R. 27.) According to Petitioner, that means that PCR appellate counsel's decision not to present the issue "flows from" a purported ineffectiveness as PCR hearing counsel in "fail[ing] to recognize the merit of the issue." Petitioner's logic is clear only in its mistakenness. As the Court has previously held, "*Martinez*, however, does not hold that the ineffective assistance of counsel *in a PCR appeal* establishes cause for a procedural default." *Cross*, 2013 WL 1207067, at *3 (emphasis added). Petitioner alleges ineffective assistance in a PCR appeal—specifically, an error in an appellate filing with a state supreme court. That does not fit within the *Martinez* exception.

The Court therefore adopts the Report and Recommendation and grants summary judgment for Respondent as to Ground Twelve.

### J.     Ground Eighteen

Petitioner concedes that the Fourth Circuit's decision in *Fisher v. Angelone*, 163 F.3d 835 (4th Cir. 1998) forecloses relief on the cumulative effect of ineffective assistance claims when each claim individually is insufficient for relief. (Pet'r's Resp. 44) Petitioner nonetheless argues

that "[t]his Court, however, should follow the reasoning of the Second, Seventh, and Ninth Circuits." Petitioner must address that argument to the Fourth Circuit *en banc*. The Court adopts the Report and Recommendation and grants summary judgment for Respondent as to Ground Eighteen.

## IV.    Conclusion

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge (Dkt. No. 52) as the Order of this Court, **GRANTS** Respondent's Motion for Summary Judgment (Dkt. No. 26), and **DISMISSES** the Petition for a Writ of Habeas Corpus (Dkt. No. 1).

### Certificate of Appealability

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).  A prisoner satisfies the standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this case, the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March __1__, 2016
Charleston, South Carolina